**COHELAN KHOURY & SINGER**
Timothy D. Cohelan (SBN 60827)
*tcohelan@ckslaw.com*
Isam C. Khoury (SBN 58759)
*ikhoury@ckslaw.com*
J. Jason Hill (SBN 179630)
*jhill@ckslaw.com*
605 "C" Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

[Additional attorneys listed on signature page]

Attorneys for Plaintiff John Stemmelin and all others similarly situated

<div style="margin-left:2em; font-weight:bold; text-transform:uppercase; font-variant:small-caps;">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

</div>

| | |
|---|---|
| JOHN STEMMELIN, on behalf of himself and all other persons similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>MATTERPORT, INC., a Delaware corporation; RJ PITTMAN; DAVE GAUSEBECK; MATT BELL; CARLOS KOKRON; PETER HEBERT; JASON KRIKORIAN; and MIKE GUSTAFSON,<br><br>      Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, AND/OR INJUNCTIVE/DECLARATORY RELIEF**<br><br>1.  **VIOLATIONS OF THE DISCLOSURE AND ADVERTISING REQUIREMENTS OF BUSINESS OPPORTUNITY LAWS AND SELLER ASSISTED MARKETING PLAN LAWS;**<br><br>2.  **VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") [Cal. Business & Professions Code §§ 17200-17208, *et seq*.];**<br><br>3.  **VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL") [Cal. Business & Professions Code §§ 17500, *et seq*.]**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff JOHN STEMMELIN, on behalf of himself and all others similarly situated ("Plaintiff"), hereby complains and alleges as follows based on investigation, information, and belief:

## INTRODUCTION AND GENERAL ALLEGATIONS

1.      This class action lawsuit involves the false enticement of a lucrative business opportunity presented by MATTERPORT, INC, a Delaware corporation ("Matterport"), along with its business directors, RJ PITTMAN, DAVE GAUSEBECK, MATT BELL, CARLOS KOKRON, PETER HEBERT, JASON KRIKORIAN, and MIKE GUSTAFSON ("Individual Defendants") (collectively, "Defendants") who each engage in the advertising and sale of "business opportunities," also referred to under certain state laws as "seller assisted marketing plans," relating to the sale of Matterport 3D cameras and associated services.

2.      Defendants sell 3D cameras and advertise the lucrative business opportunity associated with the allegedly burgeoning industry of 3D camera services. To induce purchasers and create demand for their 3D cameras, Defendants' sales representatives represent to potential buyers and the public that buyers will receive marketing materials and filtered leads in their geographic location that will pay for the initial investment in the Matterport 3D camera in six months. For example, Defendants promise "Pre-qualified local leads seeking 3D scanning services is a benefit of our MSP program. We match Matterport Service Partners on local proximity to leads who come in requesting a scan service. We've created the necessary resources and materials you need to sell MATTERPORT on your own and generate business too!"

3.      Defendants' representations are false. In reality, it is exceedingly difficult for 3D camera purchasers to realize a profit because the market for providing 3D scanning is saturated and the leads for new business are few. Had Plaintiff known that the alleged lucrative 3D camera business was not profitable, he would not have purchased Defendants' 3D cameras.

4.      Furthermore, while Defendants have engaged in business as sellers of assisted marketing plans for several years, at no time did Defendants comply with the statutory requirements of twenty-one jurisdictions, including but not limited to, 815 ILCS 602/5-1, *et seq.*,

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

known as the Illinois Business Opportunity Sales Law ("BOSL").[1]

5.     Plaintiff, on behalf of himself and the Multi-State Class defined below, brings this action pursuant to the laws of jurisdictions that (1) prescribe specific disclosures be provided by sellers of business opportunities to purchasers prior to executing sales contracts, (2) require filings be submitted by sellers of business opportunities to an authoritative body of the state, and (3) prohibit the making of misrepresentations and omitting material facts in connection with the offer or sale of a business opportunity to obtain remedies for Defendants' unlawful conduct concerning the business opportunity of 3D camera services to Plaintiff and members of the Multi-State Class.

6.     In addition, Plaintiff, on behalf of himself and the National Class defined below, brings this action pursuant to California's Unfair Competition Law ("UCL"), Business & Professions Code sections 17200, *et seq.*, and California's False Advertising Law ("FAL"), Business & Professions Code sections 17500, *et seq.*, to obtain remedies for Defendants' unlawful, fraudulent, and unfair conduct in failing to comply with regulations governing sales of business opportunities and making misrepresentations and omitting material facts concerning the business opportunity of 3D camera services to Plaintiff and members of the National Class.

7.     Defendants never provided required disclosures, did not comply with registration requirements, engaged in deceptive, unlawful, and unfair trade practices, did not honor any geographic limitations, and saturated ill-defined and non-lucrative markets. As a result, all of Matterport's contracts with Plaintiff and the members of the Classes who purchased Defendants' illusory business opportunity are voidable, and Plaintiff and the other Class Members are entitled to damages, rescission, injunctive, and declaratory relief, plus reasonable attorney's fees and costs.

## JURISDICTION AND VENUE

8.     Pursuant to 28 U.S.C. section 1332(d)(2)(A), this Court has subject matter

---

[1] Excluding California, the twenty-one jurisdictions with statutes specifically regulating, *inter alia*, seller assisted marketing plans or business opportunities for which a private right of action may be brought on behalf of a class are: Alaska, Connecticut, Florida, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Michigan, Minnesota, Nebraska, North Carolina, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Virginia, Washington, and Washington D.C.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

jurisdiction in this matter because the aggregated amount in controversy exceeds $5,000,000[2] exclusive of interests and costs, and is a class action in which Plaintiff is a citizen of a different state than Defendants.

9.    Venue is proper pursuant to 28 U.S.C. section 1391(b)(1) because Matterport resides in this District and all the Defendants reside in California. Venue is also proper pursuant to 28 U.S.C. section 1391(b)(2) because this is the District in which a substantial part of the events or omissions giving rise to the claim occurred. Upon information and belief, Matterport is located and is domiciled in this county and maintains offices and transacts business in this county. Further, the unlawful acts and business practices alleged herein are directed and controlled from Defendants' corporate headquarters located in Sunnyvale, California in Santa Clara County. Lastly, the contracts and terms of use governing the relationship between Plaintiff and Defendants provide for lawsuits to be commenced in courts located in Santa Clara County, California.

## **THE PARTIES**

### *Plaintiff*

10.    At all relevant times, John Stemmelin ("Stemmelin") was and is a natural person over the age of eighteen, residing in Illinois.

### *Defendants*

11.    Matterport is a Delaware corporation with its headquarters and principal place of business located at 352 E. Java Drive, Sunnyvale, California 94089. Matterport is engaged in business throughout California and engages in soliciting contracts for business opportunities and seller assisted marketing plans related to its 3D camera products and associated services through what is referred to by the company as the Matterport Service Partner ("MSP") program. Matterport's executive, legal, marketing, information technology, and customer service departments are all located in California.

12.    On information and belief, each of the Individual Defendants, Matterport's Directors, resides in California.

---

[2] On information and belief, each Class Member's individual damages exceed $22,000 and there are at the very least 230 members in each of the proposed Classes, i.e., the Multi-State Class and the National Class. Thus, the aggregated amount in controversy exceeds $5,000,000.

13.     At all relevant times, RJ Pittman ("Pittman") was the Chief Executive Officer of Matterport and is on the Board of Directors. Pittman is the principal executive officer, a director of Matterport, and directly or indirectly controls Matterport.

14.     At all relevant times, Dave Gausebeck ("Gausebeck") was the Chief Technology Officer of Matterport and on the Board of Directors. Gausebeck is a director of Matterport and directly or indirectly controls Matterport.

15.     At all relevant times, Matt Bell ("Bell") was the co-founder, advisor, and a member of the Board of Directors of Matterport. Bell directly or indirectly controls Matterport.

16.     At all relevant times, Carlos Kokron ("Kokron") was a member of the Board of Directors of Matterport. Kokron directly or indirectly controls Matterport.

17.     At all relevant times, Peter Hebert ("Hebert") was a member of the Board of Directors of Matterport. Hebert directly or indirectly controls Matterport.

18.     At all relevant times, Jason Krikorian ("Krikorian") was a member of the Board of Directors of Matterport. Krikorian directly or indirectly controls Matterport.

19.     At all relevant times, Mike Gustafson ("Gustafson") was on the Board of Directors of Matterport. Gustafson directly or indirectly controls Matterport.

20.     Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of and/or in concert with the other Defendants, carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. Plaintiff is informed and believes that all Defendants are to be jointly and severally liable for the unlawful acts as described herein. Further, Plaintiff is informed and believes, and based thereupon alleges, that Defendants, and each of them, each had knowledge and information sufficient to them to have authorized, ratified, and directed the acts of one another as their conduct relates to Defendants' uniform practices and treatment of the proposed Class members.

## FACTUAL ALLEGATIONS

### *Matterport's Business Model, Misrepresentations, and Omissions*

21.     Matterport sells 3D cameras that create 3D models of real-world places, which

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

have many potential applications, including in connection with real estate sales. Matterport advertises, promotes, and sells 3D cameras to the public. Through its advertisements, promotional materials, in-person and telephonic solicitations, and websites, Matterport offers a business opportunity to its 3D camera purchasers, including providing filtered leads and additional support and services. Matterport refers to 3D camera purchasers and purchasers of its services and support as "MSPs" or Matterport Service Partners.

22.     Matterport made false statements on its website in connection with its 3D camera sales, such as "Pre-qualified local leads seeking 3D scanning services is a benefit of our MSP program. We match Matterport Service Partners on local proximity to leads who come in requesting a scan service. We've created the necessary resources and materials you need to sell Matterport on your own and generate business too!"

23.     Matterport's inside sales representatives falsely represent to potential buyers that MSPs receive marketing materials and "filtered leads" in their geographic 3 to 30-mile location that would pay for the initial investment in the Matterport 3D camera in "six months." On information, investigation, and belief, the same misrepresentations were part of a standard script that was communicated by Matterport to hundreds, if not thousands, of individual purchasers to induce potential buyers to purchase a high-priced 3D camera and pay for associated support and services.

24.     Through Matterport's sales pitches, solicitations, advertisements, and promotional materials, consumers are enticed to purchase a piece of equipment for which they have very little personal use by the promise of a for-profit, cannot-lose business opportunity in what Defendants claim is a nascent, but exponentially growing, industry.

25.     Matterport's website, formerly located at https://www.matterport.com/matterport-service-partner-network/benefits, stated "YOUR BUSINESS, YOUR WAY" and "Be your own boss, set your own hours, and earn what you want. For only $4,100* in up-front investment and minimal training, you'll be on your way to a lucrative, self-owned business."

26.     Defendants' representations are false, deceptive, and likely to mislead a reasonable consumer. Additionally, Defendants omitted material facts as more fully set forth below.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

27.     Matterport's 3D camera and supporting services constitute a "closed system," meaning that all of it is proprietary. Every scan done by Matterport's 3D cameras requires Matterport's proprietary software, technical support, maintenance, and server-space services provided only by Matterport.

28.     In addition to the sale of the 3D camera itself, Matterport requires that its MSPs scan and upload images to its computer systems, and pay cloud service storage fees and software fees from the 3D cameras. After a handful of such uploads, Matterport declares that the "purchaser" is a "partner" and promises geographic limitations and in-bound lead sales calls.

29.     Matterport designs its 3D cameras to require constant software updates. The cameras save files (scanned images) in a format that is unreadable unless the 3D camera buyer also purchases a plan with Matterport software, support services, and cloud member services.

30.     If Plaintiff and Class Members do not pay the monthly fee for Matterport's Cloud Service Plan, the 3D camera equipment they purchased is rendered entirely useless, as it cannot be used without the mandatory "tied" services, software, and cloud storage that are included in Matterport's Cloud Service Plan. Plaintiff and Class Members would also lose all access to the images they previously scanned and the 3D models they already created. Matterport would retain them, however.

31.     Furthermore, Matterport saturated Plaintiff's and Class Members' local areas with other purchasers to whom Matterport also promised filtered leads, but Defendants failed to inform Plaintiff or Class Members of this material fact. As a result, Plaintiff has not been able to profit as promised from Matterport's supposed "lucrative" business opportunity. Upon investigation, information, and belief, this is also true for the members of the Classes, defined below.

32.     Defendants also made material misrepresentations in their marketing and promotional activities that Matterport's 3D cameras, 3D scanning, and equipment are easy to use, when they were not. For example, Matterport misrepresented that "Matterport scanning is easy to learn in minutes" and "easy for anyone to get started, fast." Additionally, Matterport misrepresented that it would provide MSPs with training and resources, but Matterport provided

little to no technical support. Thus, in addition to the huge costs for the scanner and business start-up costs, Defendants failed to disclose the amount of technical expertise necessary to actually perform viable and usable scans, and failed to disclose that Defendants' technical support team services nationwide were essentially in the hands of one or two people. The result was that MSPs, like Plaintiff, who relied on the need for technical support were denied such access and relegated to actually serving as a peer-to-peer technical support team.

33.     Plaintiff and Class Members detrimentally relied on Defendants' representation that substantive technical support would be provided, and had Defendants disclosed the true facts about their nascent technical support "team" and the fact that the business start-up costs would include hundreds of hours of time just to be able to use the technology in order to be paid for scanner services, a reasonable person would have walked away from Matterport's MSP and scanner purchase. Instead, MSPs and participants served as their own technical support and were performing quality assurance functions that were otherwise promised to be provided by Matterport, but were not.

34.     At all relevant times, Defendants failed to disclose that the MSP program could be abandoned and the investment in the camera and the MSP program would be lost.

35.     At all relevant times, Defendants failed to disclose that they were actually setting up their own scanning network where they set the price, and actually become a direct competitor for scanning business against the camera purchaser and/or MSPs. Specifically, after an MSP built a Matterport-based website for their business opportunity, participants in the program were, in effect, just free marketers and promoters of the Matterport equipment and required cloud service arrangements.

36.     Even after Plaintiff and other MSPs learned the technical issues relating to making 3D scans, Matterport failed to disclose that it would be using the data generated by MSPs to then enter their local geographic markets and offer to provide scans at a fraction of the cost that would otherwise be borne by MSPs, thereby cannibalizing the market and harming MSPs' ability to earn money from their Matterport scanning business. Thus, not only did Matterport fail to ever deliver on vetted leads or prospective leads, by entering the market and

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

undermining the cost or service fees of its MSPs, Matterport undercut the ability of MSPs to market scanning services in their communities. Defendants' actions to enter local markets, failure to provide the promised business leads, and lack of technical support, basically renders the MSP program worthless, and actually invites MSP clients to seek out Matterport directly since Matterport has access to this information through the program.

37.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Classes have suffered damages.

### Matterport's Sales of 3D Cameras Offered a Business Opportunity Subject to Disclosure Requirements of Twenty-One Jurisdictions

38.     As alleged herein, twenty-one jurisdictions impose disclosure requirements on persons or companies, such as Defendants, seeking to offer "business opportunities" or "seller assisted marketing plans." These laws apply to promises or offers to engage in a money-making enterprise conditioned on the purchase of the seller's goods, equipment, supplies, or services.

39.     Illinois' BOSL, 815 ILCS 602/5-10(a), defines a "business opportunity" as:

> [A] contract or agreement, between a seller and purchaser, express or implied, orally or in writing, wherein it is agreed that the seller or a person recommended by the seller shall provide to the purchaser any product, equipment, supplies or services enabling the purchaser to start a business when the purchaser is required to make a payment to the seller or a person recommended by the seller and the seller represents directly or indirectly, orally or in writing, any of the following, that: . . . (2) the seller or a person recommended by the seller will provide or assist the purchaser in finding outlets or accounts for the purchaser's products or services; . . .  (4) the seller guarantees that the purchaser will derive income from the business which exceeds the price paid to the seller; . . . (6) the seller will provide a marketing plan, provided that this Law shall not apply to the sale of a marketing plan made in conjunction with the licensing of a federally registered trademark or federally registered service mark.

40.     Illinois requires disclosures to potential purchasers and registration with the state. 815 ILCS 602/5-35(a); 815 ILCS 602/5-35(b)(1)-(25).

41.     Twenty other jurisdictions have substantially similar or identical disclosure and registration requirements for sellers of business opportunities. They are Alaska, Connecticut, Florida, Indiana, Iowa, Kentucky, Maine, Maryland, Michigan, Minnesota, Nebraska, North

Carolina, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Virginia, Washington, and Washington D.C.

### *Allegations Specific to John Stemmelin*

42.     In or around January 2017, Stemmelin responded to a solicitation and advertisement for a "business opportunity" relating to the use of 3D camera imaging after receiving multiple solicitations from Matterport. Matterport made false statements on its website, such as "Pre-qualified local leads seeking 3D scanning services is a benefit of our MSP program. We match Matterport Service Partners on local proximity to leads who come in requesting a scan service. We've created the necessary resources and materials you need to sell MATTERPORT on your own and generate business too!" Stemmelin saw and relied on these representations and entered into this "business opportunity" with Matterport based on them. Prior to this business opportunity, Stemmelin had never operated this type of business.

43.     Stemmelin never received any of the disclosures required by the BOSL.

44.     Stemmelin reasonably relied on Defendants' misrepresentations and omissions and purchased a 3D camera and associated services. At the time of purchase, Stemmelin's adjusted net worth was less than $250,000. On February 23, 2017, Stemmelin purchased a Matterport Pro 3D camera for approximately $3,875.27. On May 31, 2017, Stemmelin purchased a Matterport Pro2 3D camera for approximately $4,292.49. On or about May 18, 2017, Stemmelin submitted an application to the MSP program.

45.     In order to process the images from the 3D camera he purchased from Matterport, Stemmelin was required pay a monthly access fee for Matterport's Cloud Service Plan, which includes data storage and software for cloud processing, post-production tour creation, and syndication to interactive online technology, such as Multiple Listing Service ("MLS") used by realtors, and Google Street View. In 2017, Matterport's Cloud Service Plan cost approximately $49.00 per month. In 2018, the monthly fee increased to approximately $99.00 per month.

46.     At present, without counting the number of hours invested in learning to use Matterport's hardware equipment and software, Stemmelin's out-of-pocket costs for purchase of

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

the 3D cameras, the monthly fees for Matterport's Cloud Service Plan, and his business start-up costs is in excess of $22,000. Moreover, because Matterport saturated Stemmelin's local area with other purchasers to whom Matterport also promised filtered leads, Stemmelin has not been able to profit from selling 3D models generated by the equipment and services that were promised as a "lucrative" business opportunity or recoup his investment. Upon investigation, information, and belief, this is also true for the members of the Classes.

47.     As of October 22, 2019, the Illinois Secretary of State confirmed that Matterport has no registration in the State of Illinois, in violation of 815 ILCS 602/5-25, 602/5-30, 602/5-35, and 602/5-40.

48.     As a result of the aforementioned conduct, Stemmelin seeks damages and restitution on behalf of himself and the Classes defined below, as against all Defendants, in an amount according to proof.

49.     As a result of the aforementioned conduct, Stemmelin seeks injunctive and/or declaratory relief on behalf of himself and the Classes defined below, as against all Defendants, enjoining Defendants from continuing to engage in unlawful marketing and solicitations for Defendants' "seller assisted marketing plan" and "business opportunities" until Defendants meet their disclosure requirements and cease providing false, deceptive, and misleading marketing and promotional materials regarding the MSP program.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings Count I on behalf of himself and all other similarly-situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The Class Plaintiff seeks to represent is composed of and defined as follows (the "Multi-State Class"):

> All persons who, within the applicable statute of limitations, purchased Matterport's Pro, Pro2, or Pro2 Lite 3D Cameras and Matterport's "Cloud Service Plan," and became a Matterport Service Partner ("MSP") in one of the following jurisdictions: Alaska, Connecticut, Florida, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Michigan, Minnesota, Nebraska, North Carolina, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Virginia, Washington, or Washington D.C.

1   Excluded from the Multi-State Class are: (1) Defendants and Defendants' agents; (2) the Judge

2   to whom this case is assigned and the Judge's immediate family; (3) any person who executes

3   and files a timely request for exclusion from the Multi-State Class; (4) any persons who have

4   had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal

5   representatives, successors, and assigns of any such excluded person.

6       51.    In addition, Plaintiff brings Counts II–III on behalf of himself and all other

7   similarly-situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The

8   class which Plaintiff seeks to represent is composed of and defined as follows (the "National

9   Class"):

> All persons in the United States, excluding California, who
> purchased Matterport's Pro, Pro2, or Pro2 Lite 3D Cameras and
> Matterport's "Cloud Service Plan," and became a Matterport
> Service Partner ("MSP") from four years prior to the filing of this
> Complaint to the present.

13  Excluded from the National Class are: (1) Defendants and Defendants' agents; (2) the Judge to

14  whom this case is assigned and the Judge's immediate family; (3) any person who executes and

15  files a timely request for exclusion from the National Class; (4) any persons who have had their

16  claims in this matter finally adjudicated and/or otherwise released; and (5) the legal

17  representatives, successors, and assigns of any such excluded person.

18      52.    Plaintiff reserves the right to amend or modify the Multi-State Class and the

19  National Class (collectively, the "Classes") to include a broader scope, greater specificity, further

20  division into subclasses, or limitations to particular issues.

21      53.    This action is brought and may be maintained as a class action pursuant to Federal

22  Rule of Civil Procedure 23 because there is a well-defined common interest of many persons and it

23  is impractical to bring them all before the court.

24      54.    **Ascertainable Class**: The proposed Classes are ascertainable in that their members

25  can be identified by Defendants' corporate sales and service records for sales of 3D cameras and

26  the MSP program.

27      55.    **Numerosity**: The potential number of members of the Classes is estimated to be at

28  least 1,000 persons and is so numerous that joinder of all members would be unfeasible and

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The number of members of the Classes is unknown to Plaintiff at this time. However, Plaintiff reasonably estimates that, based on industry organization membership, the number of members of the Classes is greater than 1,000.

56.    **Typicality**: Plaintiff's claims are typical of the claims of all members of the Classes because all members of the Classes suffered similar injuries, losses, are owed restitution and/or pecuniary economic damages arising out of Defendants' common course of conduct in violation of law, and the injuries and damages of all members of the Classes were caused by Defendants' wrongful conduct in violation of law, as alleged herein.

57.    **Adequacy**: Plaintiff is an adequate representative of the Classes, will fairly protect the interests of the members of the Classes, has no interests antagonistic to the members of the Classes, and will vigorously pursue this suit via attorneys who are competent, skilled, and experienced in litigating matters of this type. Class Counsel is competent and experienced in litigating class actions and whose attorneys have over 100 years of combined experience in handling class action lawsuits and trials.

58.    **Superiority**: The nature of this action and the nature of laws available to Plaintiff make use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff for the wrongs alleged herein, as follows:

      a.    This case involves a large corporate Defendant and a sufficient numerous group of Class Members with many relatively small claims and common issues of law and fact;

      b.    If each individual member of the Classes was required to file an individual lawsuit, the large corporate Defendant would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each individual member of the Classes with Defendants' superior financial and legal resources;

      c.    Proof of a common business practice or factual pattern, which the members of the Classes experienced, is representative of the Classes

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

herein and will establish the right of each member of the Classes to recover on the causes of action alleged herein;

d.      The prosecution of separate actions by the individual members of the Classes, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Classes against Defendants; and which would establish potentially incompatible standards of conduct for Defendants; and/or legal determinations with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of the other members of the Classes who are not parties to the adjudications or which would substantially impair or impede the ability of the members of the Classes to protect their interests;

e.      The claims of the individual members of the Classes are not sufficiently large enough to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto without aggregation of claims and losses attributed to Defendants' illegal and deceptive conduct;

f.      Furthermore, as the damages suffered by each individual member of the Classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Classes to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action; and

g.      The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

59.      **Existence and Predominance of Common Questions of Fact and Law**: There are common questions of law and fact as to the members of the Classes which predominate over questions affecting only individual members of the Classes including, without limitation:

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

a.    Whether Defendants' sale of 3D cameras and associated services through Defendants' MSP program constituted a "seller assisted marketing plan" and "sale of business opportunity," such that disclosure was required by the laws of twenty-one jurisdictions, as alleged herein;

b.    Whether Defendants failed to provide the required disclosures to potential purchasers, as alleged herein;

c.    Whether Defendants engaged in false and misleading advertising when advertising and soliciting business for the purchase of Defendants' equipment and services pursuant to the MSP program;

d.    Whether Defendants' false representations in connection with the sale of 3D cameras and associated services through Defendants' MSP program are likely to mislead reasonably prudent consumers acting reasonably under the circumstances;

e.    Whether Defendants made omissions of material facts;

f.    Whether Class Members are entitled to damages;

g.    Whether Class Members are entitled to restitution due to lost profits or diminished sales as a direct and legal result of Defendants' unlawful, deceptive, and/or fraudulent business acts or practices in relation to Defendants' promotion, solicitation, and sale of equipment and services under the MSP program;

h.    Whether Class Members are entitled to rescind all of their contracts with Defendants;

i.    Whether Class Members are entitled to injunctive and/or declaratory relief;

j.    Whether Class Members are entitled to restitution;

k.    Whether Defendants are liable for pre-judgment interest; and

l.    Whether Defendants are liable for attorneys' fees and costs.

60.    **Manageability and Superiority of Class Action Procedure**: The nature of this

action and the nature of laws available to Plaintiff make use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff for the wrongs alleged herein. Plaintiff and proposed Class Counsel will obtain necessary consultants, economists, and accountants that can review the books, sales reports, and sales transaction records, and articulate the nature of the claims for restitution, damages, and declaratory/injunctive relief to enjoin Defendants from continuous and ongoing violations of the law.

<div align="center">

**CAUSES OF ACTION**

**COUNT I**
**Violations of the Business Opportunity Sales Laws,**
**Seller-Assisted Marketing Plan Acts,**
**and Cognate Laws of Other Jurisdictions**
**(by Plaintiff, on Behalf of the Multi-State Class, and Against Each Defendant)**

</div>

61.     Plaintiff incorporates paragraphs 1-60 of this Complaint as though fully set forth herein.

62.     Defendants' conduct, as alleged herein, in advertising, promoting, and selling the Matterport 3D cameras, "Cloud Service Plans," and the MSP program rendered Defendants:

a.     a seller of a business opportunity under the Alaska Sale of Business Opportunities Act, A.S. § 45.66.900(2); Connecticut Business Opportunity Investment Act, Conn. Gen. Stat. § 36b-61(2); Florida Sales of Business Opportunities Act, Fla. Stat. § 559.801(1); Illinois Business Opportunity Sales Law, 815 ILCS 602/5-5.10(a); Indiana Business Opportunities Transactions, Ind. Code § 24-5-8-1; Iowa Business Opportunity Promotions Law, Iowa Code § 551A.1(2)(a); Kentucky Sale of Business Opportunities Law, Kentucky Rev. Stat. § 367.801(5); Maine Regulations of the Sales of Business Opportunities Act, 32 Maine Rev. Stat. § 4691(3); Maryland Business Opportunities, Franchises and Multilevel Distribution Companies Act, Maryland Code of Business Regulation § 14-101(b); Michigan Consumer Protection Act Michigan Compiled Laws § 445.902(1)(a); North Carolina Business Opportunity Sales Law, N.C. Gen. Stat. § 66-94; Ohio Business Opportunity Plans,

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Ohio Rev. Code § 1334.01(D); Oklahoma Business Opportunity Sales Act, 71 Okla. Stat. § 802(3); South Carolina Business Opportunity Sales Act, S.C. Code § 39-57-20; South Dakota Business Opportunities Act, S. Dak. Codified Laws § 37-25A-1(2); Texas Business Opportunity Act, Tex. Bus. & Com. Code § 51.003(a); Virginia Business Opportunity Sales Act, Va. Code § 59.1-263(A); Washington Business Opportunity Fraud Act, Wash. Rev. Code § 19.110.020(1); and Washington D.C., D.C. Code § 28-3901(7);

b.    a seller assisted marketing plan under the Nebraska Seller-Assisted Marketing Plan Act, Neb. Rev. Stat. § 59-1703; and

c.    a franchise under Minnesota Commercial Regulations on Franchises, Minn. Stat. § 80C.01, Subd. 4(a)(3)(iii).

63.    Plaintiff and Multi-State Class Members purchased Matterport 3D cameras and participated in Defendants' MSP program by entering into contracts for equipment and services from Defendants to obtain a business opportunity and lead assistance.

64.    Defendants failed to comply with registration requirements for seller assisted marketing plans, business opportunities, and franchises, namely, A.S. § 45.66.010; Conn. Gen. Stat. §36b-62(a), (b); 815 ILCS 602/5-25; Ind. Code § 24-5-8-4(a); Iowa Code § 551A.7; Ky. Rev. Stat. § 367.805; 32 Me. Rev. Stat. § 4696; Md. Code, Bus. Reg. § 14-113; Mich. Comp. Laws § 445.903b; Minn. Stat. § 80C.04, Subd. 1; Neb. Rev. Stat. Ann. § 59-1724; N.C. Gen. Stat. § 66-97(a); 71 Okla. Stat. § 807; S.C. Code § 39-57-50(a); S. Dak. Codified Laws § 37-25A-8; Tex. Bus. & Com. Code § 51.051; and Wash. Rev. Code § 19.110.050(2).

65.    As of October 22, 2019, the Illinois Secretary of State confirmed that Matterport has no registration in the State of Illinois, in violation of 815 ILCS 602/5-25, 602/5-30, 602/5-35, and 602/5-40. As of June 10, 2020, several of the other states in the Multi-State Class confirmed the same.

66.    Defendants failed to comply with disclosure requirements for seller assisted marketing plans, business opportunities, and franchises, namely, A.S. §§ 45.66.080(a), (b)(1)-

(12), 9 AAC 16.020; Conn. Gen. Stat. § 36b-63(d); Fla. Stat. § 559.803; 815 ILCS 602/5-35(a), (b)(1)-(25); Ind. Code § 24-5-8-2(a), (b); Iowa Code § 551A.3; Ky. Rev. Stat. §§ 367.809(2), 367.813, 367.805(1); 32 Me. Rev. Stat. §§ 4692, 4693, 4694; Md. Code, Bus. Reg. § 14-114(a)-(c); Mich. Comp. Laws § 445.903b(1); Minn. Stat. § 80C.04, Subd. 1, § 80C.06, Subd. 5; Neb. Rev. Stat. §§ 59-1732, 59-1733(1)-(9), 59-1735-1742; N.C. Gen. Stat. §§ 66-95, 66-100(b)-(e), 75-16.2; Ohio Rev. Code § 1334.02; 71 Okla. Stat. § 808; S.C. Code § 39-57-30; S. Dak. Codified Laws §§ 37-25A-14, 37-25A-15; Tex. Bus. & Com. Code §§ 51.151, 51.163, 51.302; Va. Code § 59.1-264; and Wash. Rev. Code § 19.110.070.

67.    In addition, in making untrue, false, misleading, and deceptive statements in connection with their sale of 3D cameras to Plaintiff and the Multi-State Class Members, Defendants engaged in prohibited, deceptive, and fraudulent conduct in violation of: A.S. § 45.66.150; Conn. Gen. Stat. § 36b-67; Fla. Stat. §§ 559.809(1)-(5), (11)-(14); 815 ILCS 602/5-95(a)(1)-(3), (b)(1)-(3); Ind. Code §§ 24-5-8-5(a), (b); Iowa Code §§ 551A.9(1)-(3); Ky. Rev. Stat. § 367.815(1); 32 Me. Rev. Stat. §§ 4699(2), (4); Md. Code, Bus. Reg. § 14-121; Mich. Comp. Laws §§ 445.903, 445.903b(1); Minn. Stat. § 80C.13, Subds. 1, 2; Neb. Rev. Stat. §§ 59-1757(1)(b), (d); N.C. Gen. Stat. § 66-98(1); Ohio Rev. Code § 1334.03(A)-(B); 71 Okla. Stat. § 819; S.C. Code § 39-57-60(1); S. Dak. Codified Laws §§ 37-25A-43, 37-25A-46; Tex. Bus. & Com. Code §§ 51.301(1), (3)-(4); Va. Code § 59.1-266(1); Wash. Rev. Code §§ 19.110.120(a)-(c); and D.C. Code § 28-3904.

68.    The applicable statute of limitations for Count I in the jurisdictions comprising the Multi-State Class are:

   a. Twelve years for Maryland (Md. Code, Bus. Reg. § 14-126(a)(1), Md. Code, Cts. & Jud. Pro. § 5-102(a));

   b. Ten years for Indiana (Ind. Code §§ 24-5-8-16, 34-11-1-2(a));

   c. Six years for Connecticut (Conn. Gen. Stat. § 36b-74(a), (g)); Maine (14 Me. Rev. Stat. § 752); and Michigan (Mich. Comp. Laws § 445.911(7));

   d. Five years for Kentucky (Ky. Rev. Stat. §§ 367.819(1), 413.120(1)); and Nebraska (Neb. Rev. Stat. § 59-1758);

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

e.   Four years for Florida (Fla. Stat. §§ 95.11(3)(f), 559.813(1), (2)); North Carolina (N.C. Gen. Stat. §§ 66-100(a), (e), 75-16.2); and Washington (Wash. Rev. Code §§ 19.86.120, 19.110.170);

f.   Three years for Illinois (815 ILCS 602/5-130(a)); Iowa (Iowa Code § 551A.8(3)); Minnesota (Minn. Stat. § 80C.17, Subd. 5); Ohio (Ohio Rev. Code §§ 1334.09, 1334.10); Oklahoma (71 Okla. Stat. § 826(A)); South Carolina (S.C. Code Ann. §§ 39-5-150, 39-57-80(a), (e)); South Dakota (S. Dak. Codified Laws § 37-25A-52); Virginia (Va. Code §§ 8.01-246(4), 59.1-268); and Washington D.C. (D.C. Code §§ 12-301(8), 28-3905(d)(1)); and

g.   Two years for Alaska (A.S. §§ 45.66.120(b), 45.66.130(b)); and Texas (Tex. Bus. & Com. Code Ann. § 17.565).

69.   As a direct, legal, and proximate result of Defendants' unlawful and unfair business practices, Plaintiff and Multi-State Class Members have suffered injury in fact and harm, actual damage and losses, and are entitled to rescind their contracts and obtain judgment for actual damages, statutory damages, and other damages, in an amount according to proof. *See* A.S. §§ 45.66.120(a), 45.66.130(b); Conn. Gen. Stat. § 36b-74; Fla. Stat. § 559.813(1), (2); 815 ILCS 602/5-120(a), (b), (c); Ind. Code §§ 24-5-8-15, 24-5-8-16(a), 24-5-8-17; Iowa Code § 551A.8(1); Ky. Rev. Stat. §§ 367.815(1), 367.819(1); 5 Me. Rev. Stat. § 205-A, 32 Me. Rev. Stat. § 4700(1), (6); Md. Code, Bus. Reg. § 14-126(a)(1), (b); Mich. Comp. Laws § 445.911(2); Minn. Stat. §§ 80C.17, Subd. 1, 80C.17, Subd. 3; Neb. Rev. Stat. §§ 59-1752, 59-1754, 59-1758(1), 59-1759; N.C. Gen. Stat. § 66-100(a)-(e); Ohio Rev. Code §§ 1334.05(A)(1)-(2), 1334.09; 71 Okla. Stat. § 824(A), (B); S.C. Code Ann. § 39-57-80(a), (e); S. Dak. Codified Laws §§ 37-25A-48, 37-25A-50; Tex. Bus. & Com. Code Ann. §§ 17.50, 51.159, 51.302; Va. Code § 59.1-268; Wash. Rev. Code §§ 19.110.110(4)(d), 19.110.130; D.C. Code §§ 28-3904, 28-3905(k)(1)(A), (k)(2).

70.   Plaintiff will seek recovery of reasonable attorneys' fees and litigation costs as provided for enforcement of an important public right in an amount according to proof and

1   subject to court approval.

2       71.     The foregoing laws of the states in this Multi-State Class apply to this Count,

3   because the application of California law to override the foregoing statutes would be contrary to

4   the fundamental policies of the laws of the states in the Multi-State Class and those states have a

5   materially greater interest than California in having their laws enforced with respect to their

6   residents, and the laws of the states in the Multi-State Class would be applicable in the absence

7   of the California choice-of-law provision.[3]

8       72.     To the extent losses and damages are reasonably ascertainable, Plaintiff will seek

9   pre- and post-judgment interest at the legal rate of 10% per annum as part of the judgment.

10  **COUNT II**
    **Violation of California Business & Profession Code §§ 17200, *et seq.* for Engaging in**
11  **Unlawful, Unfair, and Deceptive Business Acts and/or Practices**
    **(by Plaintiff, on Behalf of the National Class (Excluding California),**
12  **and Against Each Defendant)**

13      73.     Plaintiff incorporates paragraphs 1-60 of this complaint as though fully set forth

14  herein.

15      74.     The contracts involved in this class action lawsuit contain a California choice-of-

16  law provision. The violations of California law asserted in this Count are applicable to Plaintiff and

17  National Class Members no matter in which state they reside, although this Count specifically

18  excludes residents of California.

19      75.     California Business & Professions Code section 17200 prohibits "unfair or

20  fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."

21      76.     California Business & Professions Code section 17203 provides in pertinent part:

22          Any person who engages, has engaged, or proposes to engage in unfair

23  _____

24  [3] Each state in the Multi-State Class has statutes with specific requirements to prevent the sale
    of business opportunities and seller-assisted marketing plans without full and accurate
25  disclosures to its residents. The Illinois Business Opportunity Sales Law specifically provides
    that "[a]ny condition, stipulation or provision binding any purchaser of a business opportunity
26  to waive compliance with or relieving a person from any duty or liability imposed by or any
    right provided by this Law or any rule, regulation or order issued pursuant to this Law is void."
27  *See* 815 ILCS 602/5-130(c). The laws of the other states in the Multi-State Class have similar
    provisions. *See*, *e.g.*, A.S. § 45.66.170, Conn. Gen. Stat. § 36b-74(i), and Indiana Code § 24-5-
28  8-8.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure . . .

77.     As alleged above, Defendants have engaged and continue to unlawfully engage in fraudulent, unfair, and unlawful business practices by making false representations and omissions of material fact regarding the market for 3D camera services, the profitability of 3D camera services, the ease of learning how to use the 3D cameras to create scans, the nature and efficacy of Defendants' assistance in rendering 3D camera services, and that Matterport would become a direct competitor for scanning business against the camera purchaser and/or MSPs.

78.     Defendants engaged in fraudulent, unfair, and unlawful conduct by failing to comply with the registration and disclosure requirements set forth by the California Seller Assisted Marketing Plan Act, Cal. Civ. Code sections 1218.200, *et seq.*, and cognate laws in other jurisdictions, and engaging in deceptive, misleading, and false advertising in connection with the sale of their 3D cameras and the business opportunity as a member of their MSP program.

79.     Defendants' representations, solicitations, advertisements, and marketing materials falsely represent that their MSP program will provide a lucrative business opportunity and that, with their "lead filtering," the initial purchase price of Matterport's program and equipment will pay off the initial investment for the 3D cameras, and will "pay for itself in 6 months." Plaintiff, and upon information and belief the National Class Members, have received little or no leads, cannot profit from their equipment, and continue to pay monthly fees to access their scanned images and avoid losing access to images they created, which Matterport contends is its intellectual property even though Matterport did nothing to capture the initial images.

80.     Plaintiff and the members of the National Class reasonably relied on Defendants' fraudulent, unfair, and unlawful conduct alleged herein. Plaintiff and the members of the National Class would not have purchased Defendants' 3D cameras and associated services had they known

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Defendants' representations were false.

81.      As a direct, legal, and proximate result of Defendants' unlawful and unfair business practices, Plaintiff and National Class Members have suffered injury in fact and have lost money or property in terms of out-of-pocket expenses, lost time and effort, and lost sales and diminished profits and equipment that only operates properly with continued fees paid to Defendants under the MSP program. Accordingly, Plaintiff and National Class Members are entitled to rescind their contracts and obtain restitution from Defendants caused by Defendants' unlawful, unfair, and fraudulent business practices, in an amount according to proof. Cal. Bus. & Prof. Code sections 17203-17204.

82.      The statute of limitations applicable to Count II is four years. *See* Cal. Bus. & Prof. Code § 17208.

83.      Plaintiff requests a declaration that Defendants' conduct constitutes an ongoing violation of the SAMP Act and cognate laws of other jurisdictions, and will ask the Court to enjoin Defendants from engaging in illegal conduct that is continuous and ongoing as of the date of commencement of this action.

84.      Further, in addition to restitution, declaratory and injunctive relief, Plaintiff seeks an award of reasonable attorneys' fees and costs, and expenses for an accounting.

**COUNT III**
**Violations of the False Advertising Law,**
**California Business & Professions Code §§ 17500, *et seq*.**
**(by Plaintiff, on Behalf of the National Class (excluding California),**
**and Against Each Defendant)**

85.      Plaintiff incorporates paragraphs 1-60 of this complaint as though fully set forth herein.

86.      The contracts involved in this class action lawsuit contain a California choice-of-law provision. The violations of California law asserted in this Count are applicable to Plaintiff and National Class members no matter in which state they reside, although this Count specifically excludes residents of California.

87.      California Business & Professions Code sections 17500, *et seq*. prohibits untrue or misleading advertising that is known, or which reasonably should be known, to be untrue or

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

misleading. A violation of California Business & Professions Code sections 17500, *et seq*. is also a violation of sections 17200, *et seq*., which prohibits "any unfair, deceptive, untrue or misleading advertising." *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 210 (Cal. 1983).

88.     Defendants' representations, solicitations, advertisement, and marketing materials falsely represent that their MSP program will provide a lucrative business opportunity and that with their "lead filtering," the initial purchase price of Matterport's program and equipment will pay off the initial investment for the 3D camera, and will "pay for itself in 6 months." Plaintiff, and upon information and belief the National Class Members, have received little or no leads, cannot profit from their equipment, and continue to pay monthly fees to access their scanned images and avoid losing access to images they created, which Matterport contends is its intellectual property even though Matterport did nothing to capture the initial images. Defendants have made false representations and omissions of material fact regarding the market for 3D camera services, the profitability of 3D camera services, the ease of learning how to use the 3D cameras to create scans, the nature and efficacy of Defendants' assistance in rendering 3D camera services, and that Matterport would become a direct competitor for scanning business as against the camera purchaser and/or MSPs.

89.     The statute of limitations applicable to Count III is four years. *See* Cal. Bus. & Prof. Code § 17208.

90.     As a direct, legal, and proximate result of Defendants' unlawful, unfair, and deceptive conduct and business practices, Plaintiff and National Class Members have suffered actual harm and injury in the loss or diminishment of sales directly related to the unfair and anti-competitive advantage exploited by Defendants. Plaintiff, on behalf of himself and the members of the National Class, will seek restitution from Defendants in an amount according to proof. Cal. Bus. & Prof. Code §§ 17200, 17203-17204.

91.     Plaintiff requests and will seek an order declaring that Defendants' representations are false and misleading as to business opportunity and gains, as well as with regard to the ownership of scanned images, since the author of the images is the person who did the scans.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Purchasers of Defendants' MSP program were misled and, if they ever stop payment of the monthly fee, they lose all access to their prior images.

92.     In addition to damages, restitution, and declaratory and injunctive relief, Plaintiff will seek an award of reasonable attorneys' fees and costs, and expenses for an accounting.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing allegations, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment as follows:

a.    That the Court issue an Order certifying that this action may be maintained as a class action as permitted by Fed. R. Civ. Proc. 23, and certify the Classes set forth herein, appointing Plaintiff as representative of the Classes, and appointing the law firms of Cohelan Khoury & Singer and Zimmerman Law Offices, P.C. as Class Counsel for the Classes;

b.    Entering judgment in favor of Plaintiff and the Classes, and against Defendants, jointly and severally;

c.    Entering a declaratory judgment against Defendants, and enjoining Defendants from continuing to offer seller assisted marketing plans, business opportunities, and franchises until they have complied with the law;

d.    Awarding Plaintiff and the Classes damages equal to the amount of actual damages that they sustained, statutory or liquidated damages allowable by law, plus punitive damages;

e.    Awarding Plaintiff and the Classes the remedy of rescission of contract, as allowable by law;

f.    Awarding Plaintiff and the Classes attorney's fees and costs, including interest thereon, as allowed or required by law; and

g.    Granting all such further and other relief as the Court deems just and appropriate.

///

Dated: June 24, 2020

**COHELAN KHOURY & SINGER**


By:  _/s/ J. Jason Hill_____
      Timothy D. Cohelan
      Isam C. Khoury
      J. Jason Hill

**ZIMMERMAN LAW OFFICES, P.C.**
Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Sharon A. Harris
*sharon@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
*(Pro Hac Vice Applications Forthcoming)*

Attorneys for Plaintiff JOHN STEMMELIN, and
the putative Classes

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury to the extent authorized by law.

Dated: June 24, 2020

**COHELAN KHOURY & SINGER**


By:  _/s/ J. Jason Hill_____
      Timothy D. Cohelan
      Isam C. Khoury
      J. Jason Hill

**ZIMMERMAN LAW OFFICES, P.C.**
Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Sharon A. Harris
*sharon@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
*(Pro Hac Vice Applications Forthcoming)*

Attorneys for Plaintiff JOHN STEMMELIN, and
the putative Classes

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint