UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN STEMMELIN, individually and behalf of those similarly situated,

  Plaintiffs,

 v.

MATTERPORT, INC., et al.,

  Defendants.

No. C 20-04168 WHA

**ORDER GRANTING MOTION TO DISMISS**

### INTRODUCTION

In this false and deceptive advertising putative class action, defendants move to dismiss for lack of standing and for failure to state a claim. For the following reasons, the motion is **GRANTED**.

### STATEMENT

Defendants, Matterport, Inc., and its officers, market "3D cameras that create 3D models of real-world places, which have many potential applications, including in connection with real estate sales." Supporting these cameras, defendants also offer services such as software for three-dimensional image manipulation and cloud storage and advertise the Matterport Service Partner program, which provides perks such as "[p]re-qualified local leads seeking 3D scanning services" and all "the necessary resources and materials you need to sell Matterport on your own and generate business too." Allegedly, defendants pitch the program as a way to

"[b]e your own boss, set your own hours, and earn what you want. For only $4,100[] in up-front investment and minimal training, you'll be on your way to a lucrative, self-owned business."

Beneath this shiny exterior, however, plaintiffs allege several problems. Defendants' cameras and services constitute a closed, proprietary system. The 3D cameras are usable only with defendants' technical support and maintenance and create files that are both readable only by defendants' software (which requires constant updates) and storable only on defendants' cloud servers. Moreover, the Matterport Service Partner program offers anything but a lucrative business opportunity. The cameras are not, in fact, easy to use, but require significant time and effort to operate effectively, much less profitably. Then, defendants have already saturated the small markets that do exist for 3D scanning services with other Matterport Service Partners; so none can break even on their investment. Atop this, defendants themselves have has entered many of those markets, cannibalizing opportunities from their so-called service partners.

Plaintiff John Stemmelin of Illinois saw defendants' ads around January 2017 and purchased his first camera in February. In May, he applied for the Matterport Service Partner program and purchased a second camera. After countless hours learning to use the cameras and attempting to start his own 3D scanning business, Mr. Stemmelin had spent more than $22,000 with little to show for it.

He sued in June 2020, alleging violation of twenty one states' and Washington D.C.'s business opportunity laws on behalf of a putative class of the deceived. He also charged defendants with violations of California's unfair competition and false advertising laws (Compl., Dkt. No. 1).

Defendants move to dismiss the complaint both for Stemmelin's lack of standing to pursue state law claims where he was not injured and for failure state a claim (Dkt. No. 22). This order follows full briefing and oral argument (held telephonically due to COVID-19).

**ANALYSIS**

A complaint must allege sufficient factual matter to state a facially plausible claim for relief. Allegations merely consistent with liability don't cut it; rather the allegations must indicate or permit the reasonable inference, without speculation, of defendants' liability for the conduct alleged. We take as true all factual allegations but legal conclusions merely styled as fact may be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 1. CALIFORNIA UNFAIR COMPETITION AND FALSE ADVERTISING.

Claims sounding in or grounded in fraud, such as false or deceptive advertising under California's unfair competition and false advertising laws must be pled with particularity under Rule 9(b). Cal. Bus. & Prof. Code §§ 17200 *et seq.*, §§ 17500 *et seq.*; *see Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1227–28 (9th Cir. 2019); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Kwikset v. Superior Court*, 51 Cal. 4th 310, 320, 326, 246 P.3d 877 (2011). Such a complaint must specify:

> [T]he time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations. In other words, the pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quotations and citations omitted).

Here, Stemmelin alleges that "[i]n or around January 2017" he "responded" to defendants' advertisements for business opportunities related to the "use of 3D camera imaging," specifically the offer of "necessary resources and materials" and "[p]re-qualified local leads seeking 3D scanning services" for "Matterport Service Partners" to start their own businesses. "Stemmelin saw and relied on these representations and entered into this 'business opportunity' with Matterport based on them." He purchased a first camera for $3,875.27 in February 2017, applied to the Matterport Service Partners program in May, and then bought a second camera for $4,292.49. Stemmelin paid for defendants' Cloud Service Plan, $49.00 per

3

Case 3:20-cv-04168-WHA Document 38 Filed 11/07/20 Page 4 of 9

month in 2017, and $99.00 per month from 2018 on. In total, Stemmelin has spent $22,000 on defendants' goods and services, but "has not been able to profit from selling 3D models generated by the equipment and services that were promised as a 'lucrative' business opportunity or recoup his investment" (Compl. at ¶¶ 42–46).

Set aside the question of the who, the what, and the when. Though the complaint explains at length how class counsel believes a *hypothetical* plaintiff might be deceived by defendants' advertising, the complaint offers no allegations *how Mr. Stemmelin relied and acted* to his detriment upon defendants' advertisement. The complaint merely concludes that "Stemmelin reasonably relied on Defendants' misrepresentations and omissions and purchased a 3D camera and associated services" and that he never recouped his $22,000 investment. How did Stemmelin rely? How did he understand defendants' representations? How did he pursue the offered business leads and supporting resources once he purchased his camera? The complaint leaves these questions unanswered. We don't even know whether Mr. Stemmelin, in fact, became a Matterport Service Partner. Simply put, the allegations of *fact* are consistent with a scenario whereby Mr. Stemmelin saw an ad for a business opportunity, purchased the startup equipment and services, and then, without honestly pursuing the advertised opportunity, sat down and concluded he'd been swindled.

Rule 9's heightened pleading requirement plays *substantive* role here. California's unfair competition and false advertising laws sound in fraud and require a plaintiff's reliance on a misrepresentation to be reasonable under the circumstances. *See Kwikset*, 51 Cal. 4th at 326–27; *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412, 447 (1945). Under the unfair competition and false advertising laws, this requirement manifests as the "reasonable consumer" test. We evaluate deceptive advertising from the viewpoint of a reasonable consumer and so require the plaintiff to offer a reasonable interpretation of the ad likely shared by ordinary consumers in general, as opposed to a particular subset of consumers viewing the ad unreasonably. The complaint's failure to allege more than that Stemmelin saw an ad and purchased a product prevents us from evaluating whether Stemmelin reasonably relied, as ordinary consumers might, on defendants' advertising or whether he willfully walked into the alleged deception.

4

*Becerra*, 945 F.3d at 1228–31. The claims under California's false advertising and unfair competition law fail under Rule 9.

### 2. MULTISTATE BUSINESS OPPORTUNITY CLAIMS.

#### A. LACK OF STANDING.

Mr. Stemmelin seeks to represent a class of plaintiffs from twenty jurisdictions (not including California) in addition to his home of Illinois. Defendants contend that Mr. Stemmelin may not assert claims from the states where he suffered no harm. This order agrees.

Article III's "irreducible constitutional minimum of standing" to sue requires a plaintiff to have suffered: (1) an injury-in-fact; (2) that is fairly traceable to the defendant's conduct; and (3) is redressable by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[A] plaintiff must demonstrate standing for each claim he seeks to press" and "separately for each form of relief sought." Just because a suit "derive[s] from a common nucleus of operative fact" does not mean "federal jurisdiction extends to all claims sufficiently related to a claim within Article III to be part of the same case." *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351–52 (2006).

At bottom, "the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate." *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015). Here, Mr. Stemmelin alleges that defendants deceived putative class members into purchasing 3D cameras and related services (Compl. at ¶¶ 64–67). The harm attaches to each class member at purchase under her applicable state law. That is, the location of the deception-induced purchase limits the scope of standing. It appears clear that Mr. Stemmelin purchased his cameras in Illinois, but he does not allege to have purchased any cameras or services elsewhere (*id.* at ¶¶ 42–49). Claims for relief under the laws of the several states are *separate* claims for relief and, per *DaimlerChrysler*, require separate proof of standing. "Standing does not arise simply because illegality is in the air." *In re Capacitors Antitrust Litigation*, 154 F. Supp. 3d 918, 927 (N.D. Cal. 2015) (Judge James Donato). Mr. Stemmelin made no relevant purchases in and thus lacks standing to represent putative class members under the laws of Alaska,

Connecticut, Florida, Indiana, Iowa, Kentucky, Maine, Maryland, Michigan, Minnesota, Nebraska, North Carolina, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Virginia, Washington, and Washington, D.C.

Both parties recognize that the undersigned addressed the same circumstances regarding state antitrust claims in *In re Glumetza Antitrust Litigation*, No. C 19-05822 WHA, 2020 WL 1066934 at *10 (N.D. Cal. Mar. 5, 2020). As did the plaintiffs there, Mr. Stemmelin contends that the above reasoning "conflates standing and class certification" and contravenes *Melendres*. Again, not so.

In *Melendres*, plaintiffs all raised federal constitutional claims against the Maricopa County Sherriff's Department for conduct all within the District of Arizona. The short distinction is that *Melendres* did not address the circumstance here, where our named plaintiff raises claims under numerous jurisdictions where he was not harmed. The legal distinction, though, is that the named plaintiffs in *Melendres* asserted the *same* constitutional injury as the class; they just alleged different circumstances. But the dissimilarity of circumstances raised *within the same claim* was "relevant only to class certification, not to standing." So, the question whether the named plaintiffs — who defendants conceded had standing — could present the *same* claim "on behalf of others who ha[d] similar, but not identical, interests" was one of "typicality and adequacy." *See Melendres*, 784 F.3d at 1257–58, 1261–62. Here, where Mr. Stemmelin raises *separate* claims under the laws of several states, the general requirement of standing for *each* claim and mode of relief articulated in *DaimlerChrysler* remains unsatisfied.

Ultimately, Stemmelin's theory provides no guardrail against the creation of artificial disputes here. Even more fundamental to the federal judiciary than the power of judicial review is the tenet that the federal judiciary does not issue advisory opinions or wade into controversies of its own making. *Correspondence of the Justices*, Letter to George Washington, Aug. 8, 1793, *Founders Online*, NAT'L ARCHS., https://founders.archives.gov/documents/Washington/05-13-02-0263. From here flows the requirement that a justiciable controversy requires at least one plaintiff and at least one defendant. *See, e.g.*, *U.S. v. Johnson*,

319 U.S. 302, 305 (1943). Putting off until class certification the question of Stemmelin's representation of putative class members under *other* states' laws would both permit him to represent a putative class from a state whose members all opt-out following class certification and, more dangerously, permit him to press claims under some state's law only to find in discovery that *no putative class members ever existed there*.

This issue did not arise regarding state antitrust claims in *Glumetza* given the prevalence of diabetes and its treatment across the nation. But on these pleadings, that risk is real. Mr. Stemmelin's complaint alleges only one thousand class members and alleges neither where they live nor that at least one putative class member resides in each state of the multi-state class. Forget simply wrangling with the propriety of an Illinois resident hauling, say, Maine residents' *Maine-law* claims into a California tribunal without asking them first. Here, under Mr. Stemmelin's application of *Melendres*, we might rule on the meaning and application of Maine's Regulations of the Sales of Business Opportunities in the near future only to find out in discovery that no such class members — and thus no actual controversy — ever existed. Absent precedent dictating we take this risk, this order declines to do so. All but Stemmelin's Illinois claim are dismissed.

### B.   ADEQUACY OF PLEADING.

Illinois' Business Opportunity Sales Law of 1995 defines a "business opportunity" as "a contract or agreement . . . wherein it is agreed that the seller or a person recommended by the seller shall provide to the purchaser any product, equipment, supplies or services enabling the purchaser to start a business . . . ." The law prohibits fraud or deception in offering or selling such business opportunities. It also requires, with some exceptions, anyone offering or selling such business opportunities to register with the secretary of state. "[T]he purchaser" of such a business opportunity, peddled in violation of either provision, may sue for rescission, restitution and treble damages, interest, and attorney's fees and costs. 815 ILCS 602, §§ 5-5.10(a), 5-95, 5-120(b). Defendants contend that the complaint fails to allege Mr. Stemmelin entered such a contract. This order agrees.

The complaint alleges at least that defendants offered "[p]re-qualified local leads" and "necessary resources and materials" to Matterport Service Partners and that "[f]or only $4,100[] in up-front investment and minimal training, you'll be on your way to a lucrative, self-owned business." This, at least, alleges an exchange of goods and services involving a business opportunity which, at least prima facie, looks like a contract that falls within Illinois' Business Opportunity law.

But nowhere does the complaint allege that *Stemmelin* entered such a contract. To be sure, the complaint alleges that Stemmelin purchased two 3D cameras and, in order to use those cameras, contracted for defendants' Cloud Service Plan. Recall that defendants reserved their "[p]re-qualified local leads" and "necessary resources and materials" for "Matterport Service Partners." The complaint alleges that Stemmelin "entered into this 'business opportunity'" based on defendants' ads. But despite this artful pleading, the complaint *never* alleges that Stemmelin *became* a Matterport Service Partner. It alleges only that "Stemmelin submitted an application to the MSP program." Illinois' Business Opportunity law does appear to prohibit deceptive offers for business opportunities and permits the Illinois Secretary of State to sanction illicit entities. But it limits private suit to "the purchaser" of a business opportunity. 815 ILCS 602/5-120(b).

Plaintiff does not meaningfully respond to defendants' argument on this point. It might have pointed to the statement that "Plaintiff and Multi-State Class Members purchased Matterport 3D cameras and participated in Defendants' MSP program by entering into contracts for equipment and services from Defendants to obtain a business opportunity and lead assistance" (Compl. at ¶ 63). But this broad statement appears to conflate several steps that the complaint earlier alleges as separate steps in the relationship between defendants and a potential purchaser. As above, Stemmelin purchased his 3D cameras, purchased the Cloud Service plain "[i]n order to process the images from the 3D camera he purchased," *and then*, in a separate step, applied to become a Matterport Service Partner, those for whom the advertised business opportunities were reserved. The corollary to taking the complaint's factual allegations as true is that we do not then assume facts into the complaint. The complaint does

8

not allege that Stemmelin became a Matterport Service Partner, so it remains unclear whether he ever actually purchased the challenged business opportunity.

On these pleadings, Stemmelin does not qualify as a "purchaser" of a business opportunity entitled to sue under Illinois' Business Opportunity law. The remainder of the parties' disputes regarding this claim, including plaintiff's request for judicial notice, become moot.

## CONCLUSION

For the foregoing reasons, defendants' motion is **GRANTED**. Mr. Stemmelin may move for leave to amend his complaint by **DECEMBER 3 AT NOON**. Any such motion must include as an exhibit a redlined version of the proposed amendment that clearly identifies all changes from the amended complaint. This order highlighted certain deficiencies in the amended complaint, but did not reach many issues, such as the permissible scope (if any) of the extraterritorial reach of the various state-law commercial claims. It will not necessarily be enough to add sentences parroting each missing item identified herein. If Mr. Stemmelin moves for leave to amend, he should be sure to plead his best case.

**IT IS SO ORDERED.**

Dated: November 7, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE