UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN STEMMELIN,

    Plaintiff,

  v.

MATTERPORT, INC., et al.,

    Defendants.

No. C 20-04168 WHA

**ORDER RE MOTION TO AMEND**

## INTRODUCTION

Following dismissal for failure to allege counts sounding in fraud with particularity and for lack of standing to assert a slew of multistate claims, plaintiff moves to amend. The proposed amendments introduce the requisite particularity. Some failures remain, but to the extent stated below, the motion is **GRANTED**.

## STATEMENT

Defendants, Matterport, Inc., and its officers, market "3D cameras that create 3D models of real-world places, which have many potential applications, including in connection with real estate sales." Supporting these cameras, defendants also offer services such as software for three-dimensional image manipulation and cloud storage and advertised the Matterport Service Partner (MSP) program, which provided perks such as "[p]re-qualified local leads seeking 3D scanning services" and all "the necessary resources and materials you need to sell Matterport on your own and generate business too." Allegedly, defendants pitched the program as a way

to "[b]e your own boss, set your own hours, and earn what you want. For only $4,100[ ] in up-front investment and minimal training, you'll be on your way to a lucrative, self-owned business."

Beneath this shiny exterior, however, lurked several alleged problems. Defendants' cameras and services constituted a closed, proprietary system. The 3D cameras were usable only with defendants' technical support and maintenance and created files that were both readable only by defendants' software (which requires constant updates) and storable only on defendants' cloud servers. Moreover, the MSP program offered anything but a lucrative business opportunity. The cameras were not, in fact, easy to use, but required significant time and effort to operate effectively, much less profitably. Then, defendants had already saturated the small markets that did exist for 3D scanning services with other Matterport Service Partners; so none could break even on their investment. Atop this, defendants themselves have entered many of those markets, cannibalizing opportunities from their so-called service partners.

Plaintiff John Stemmelin of Illinois saw defendants' ads around January 2017 and purchased his first camera in February. In May, he applied for the MSP program and purchased a second camera. After many hours learning to use the cameras and attempting to start his own 3D scanning business, Mr. Stemmelin had spent more than $22,000 with little to show for it.

He sued in June 2020, alleging violation of numerous states' business opportunity laws on behalf of a putative class of the deceived. He also charged defendants with violations of California's unfair competition and false advertising laws (Compl., Dkt. No. 1). On defendants' motion, a November 7 order dismissed the complaint for lack of standing and failure to state a claim. Plaintiff timely moved to amend. Defendants oppose. This order follows full briefing and oral argument (held telephonically due to COVID-19).

**ANALYSIS**

Federal Rule of Civil Procedure 15(a) dictates that leave to amend shall be freely given "when justice so requires." Absent (1) undue delay; (2) bad faith; (3) repeated failure to cure

deficiencies; (4) undue prejudice; or (5) futility, leave should be granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962). With two minor exceptions, defendants challenge the amendments only as futile, which applies the same standard as a motion to dismiss. A complaint must allege sufficient factual matter to state a facially plausible claim for relief. Allegations merely "consistent with" liability don't cut it; rather the allegations must indicate or permit the reasonable inference, without speculation, of defendants' liability for the conduct alleged. We take as true all factual allegations but legal conclusions merely styled as fact may be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1. **SCOPE OF AMENDMENTS.**

The proposed complaint realleges the multistate business opportunity claims and the California unfair competition and false advertising claims. The proposed complaint adds a California business opportunity claim, a claim for breach of the implied covenant of good faith and fair dealing, and a multistate slew of consumer fraud claims (Dkt. No. 42-1).

Defendants contend plaintiff exceeded the scope of permissible amendment by adding new claims. Not so. The prior order directed plaintiff to "plead his best case," to bypass any games or delay and put all of his claims out in the open. The proposed amendments do so. Defendants raise neither prejudice, bad faith, nor undue delay.

2. **MULTISTATE CLAIMS.**

As noted, plaintiff reasserts his multistate business opportunity claims. The prior order dismissed these claims for lack of standing, except those arising under Illinois law where plaintiff resided. But as the prior order did not expressly dismiss the claims with prejudice, plaintiff explains that he reasserts them here so as not to waive them for appeal. Fair point. The prior order did not expressly dismiss the claims with prejudice, imagining that additional plaintiffs, residing in other states, might join the suit to press claims arising under the law of other states. For clarification then, given *plaintiff* lacked standing to raise business opportunity claims not arising out of Illinois law, those claims were and are dismissed with prejudice as to

3

1  plaintiff himself and are preserved for appeal. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928
2  (9th Cir. 2012) (en banc).

3      Plaintiff seeks to expand the scope of his multistate claims, however. He adds a
4  California business opportunity claim and adds consumer fraud claims under a variety of
5  states, including Illinois and California. Setting aside the California claims, for the reasons
6  given in the prior order, all but the Illinois claims are dismissed with prejudice for lack of
7  standing.

8      Now, as the prior complaint did not raise a California business opportunity claim, the
9  prior ruling on standing did not apply to California claims. Indeed, the prior order proceeded
10  to address the raised California claims on the merits. The California Supreme Court has held
11  that California law may be invoked by foreign parties to hold California-based defendants,
12  such as ours, to account. This order discerns no Article III barrier to plaintiff so invoking
13  California law here based on transactions which allegedly originated with defendant in
14  California and culminated with plaintiff in Illinois. *See Diamond Mult. Sys., Inc. v. Sup. Ct.*,
15  19 Cal. 4th 1036, 1059–60, 968 P.2d 539 (1999); *Norwest Mort., Inc. v. Sup. Ct.*, 72 Cal. App.
16  4th 214, 222–25 (1999); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

17      **3.    CALIFORNIA UNFAIR COMPETITION.**

18      California Business and Professions Code Section 17200 prohibits a range of commercial
19  chicanery — those unlawful, unfair, or fraudulent business practices. These prongs operate
20  independently. The unlawful prong borrows violations of other laws. The unfair prong
21  prohibits practices that offend public policy or are "immoral, unethical, oppressive,
22  unscrupulous or substantially injurious to consumers." And, the fraudulent prong proscribes
23  practices which will likely deceive the public. *Kasky v. Nike*, 27 Cal. 4th 939, 949–50, 45 P.3d
24  243 (2002); *Cel-Tech Commc'ns v. L.A. Cell. Tel. Co.*, 20 Cal. 4th 163, 180–87, 973 P.2d 527
25  (1999); *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008); *People ex rel. Mosk
26  v. Nat'l Rsch. Co. of Cal.*, 201 Cal. App. 2d 765, 772 (1962).

### A. UNLAWFUL: FALSE ADVERTISING.

California Business and Professions Code Section 17500 prohibits unfair, deceptive, untrue, or misleading advertising. *Williams v. Gerber Prods.*, 552 F.3d 934, 938 (9th Cir. 2008). Violations of Section 17500 necessarily violate the unlawful prong of Section 17200. *Kasky*, 27 Cal. 4th at 950.

These claims sound in fraud and must be pled with particularity under Rule 9. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1227–28 (9th Cir. 2019); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Kwikset v. Superior Court*, 51 Cal. 4th 310, 320, 326, 246 P.3d 877 (2011). The complaint must specify:

> [T]he time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations. In other words, the pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quotations and citations omitted). We evaluate plaintiff's alleged reliance on the false advertising from the vantage of the "reasonable consumer" (unless the ad targets a specific, vulnerable population). This requires more than the possibility that some consumers will unreasonably misinterpret the ad. Rather, the complaint must plausibly allege that a significant portion of the public, acting reasonably, is likely to be deceived. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–29 (9th Cir. 2019).

Those proposed amendments specific to plaintiff himself make out a plausible claim. They specify, with reasonable particularity, the time, place, and content of defendant's misleading representations (that is, the who, what, where, and when). Following plaintiff's response to defendants' ad on Facebook in January 2017, he spoke to defendants' employee Jackie Dietzen on the phone several times over the next two months. Among others, Dietzen told plaintiff that: (1) he would only need to buy one Matterport camera and software updates would keep the product current; (2) Matterport supported MSPs with qualified business leads; and (3) plaintiff would recoup his investment inside six months. On February 21, Dietzen sent plaintiff an email linked to a Matterport webpage which he then read, learning (allegedly) that:

5

> By becoming a Matterport Service Partner, you'll join a global network of professionals who are seamlessly building businesses on top of Matterport's industry-leading 3D technology.
>
> Demand for Matterport 3D scanning has grown 400% year-over-year across verticals. Our Service Partners are there to meet the rising customer demand.
>
> Your Business, Your Way: Be your own boss, set your own hours, and earn what you want. For only $4,100[] in up-front investment and minimal training, you'll be on your way to a lucrative, self-owned business.
>
> Easy for Anyone To Get Started Fast: Matterport 3D scanning is easy to learn in minutes-really!
>
> Become a True 3D Expert: We provide you with the training and launch materials you need to start your 3D scanning business – from exclusive tutorials to sales and marketing collateral.
>
> Win New Business: Receive necessary resources and materials you need to sell Matterport, including pre-qualified local leads seeking 3D scanning services.

Around the same time, plaintiff viewed the testimonials page on Matterports' website, allegedly learning that demand for Matterport has doubled or quadrupled in locales across the country, and demand would explode further (Prop. Amend. Compl. at ¶¶ 45–48).

Next, the proposed amendments also specify how plaintiff relied on the ads and representations. Plaintiff understood defendants' representations to mean that they would provide sufficient marketing, technical support, and qualified leads in his area so that he could recoup his investment and turn a profit. So, he purchased a first camera, a tripod, clamps, a case, an iPad Pro to operate the camera, and a powerful computer to process the images. In May, plaintiff became a Matterport Service Partner (MSP) and bought the newly introduced Matterport Pro 2 camera after speaking to an unnamed Matterport employee who explained that the new camera would be necessary to his business going forward. Plaintiff then purchased a membership at the Metropolitan Club in Chicago to network for business leads, spent nearly fifty hours developing his own website, and purchased business cards (Prop. Amend. Compl. at ¶¶ 50–51, 55–56).

Then, the proposed amendments detail the falsity of the representations that plaintiff relied on. Defendants allegedly provided little technical training and their marketing materials

proved inadequate — generic, outdated, difficult to customize, and designed to promote Matterport, not plaintiff's business. Moreover, defendants' rare business "leads" usually turned out to be competitors seeking plaintiff's pricing information. In the end, after more than three years and one hundred of these "leads," plaintiff has only been able to convert two into paying jobs. To make matters worse, defendants then proceeded to enter the 3D scanning business themselves, cannibalizing the market from their "Service Partners." Ultimately, despite the representations that MSPs would operate their own business and quickly turn a profit, plaintiff has yet to recoup his costs (already north of $22,000), and is stuck paying for defendants' software and cloud services to this day in order to not lose access to his prior work (Prop. Amend. Compl. at ¶¶ 51–62).

Defendants rate the ads and statements upon which plaintiff relied as mere puffery, that is, statements no reasonable consumer would actually rely on in making decisions. *See Newcal Indus., Inc. v. Ikon Office Sols.*, 513 F.3d 1038, 1053 (9th Cir. 2008). Our court of appeals has acknowledged that whether a statement is mere puffery *may* be determined on a motion to dismiss. *See Gerber*, 552 F.3d at 939 fn. 3; *see also, Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (under the Lanham Act). On the other hand, the appellate court has cautioned against doing so in ordinary instances, particularly as "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Gerber*, 552 F.3d at 938. A plausible claim for deception will do.

Contrary to defendants' argument, however, the alleged advertisements were more than puffery. Defendants promoted an opportunity to runs one's own business in the field of 3D photography. They broadcast a specific up-front investment ($4,100), set a definite timeline for a potential-MSP to recoup her investment (six months), and promised substantial aid to new MSPs (training, start-up materials, and pre-qualified, location-specific business leads). Defendants' salespeople also told plaintiff which equipment to buy to run his business and represented that his equipment would stay up to date for some time. These manifestations could have created a certain expectation in the reasonable mind, one from which defendants

7

might have and allegedly did materially deviate. At this stage, reasonable consumers could plausibly have relied on these ads to their detriment. The claim proceeds.

### B. OTHER BASES.

The proposed amendments also recite California's Seller Assisted Marketing Plan, California Civil Code Section 1812.200 *et seq.* Defendants contend only that this prong fails because the prior order found such claim lacked standing. As stated, defendants misread the prior order. This prong of the Section 17200 claim may proceed.

Defendants also challenge the claim's unfair and fraudulent bases. This objection also fails. The adequately-pled false advertising claim under Section 17500 directly supports the fraudulent prong. *See Kasky*, 27 Cal. 4th at 949. And, the Section 17500 claim establishes a violation of a legislatively declared policy, satisfying the unfair prong as well. *See Cel-Tech*, 20 Cal. 4th at 186–87.

### 4. INDIVIDUAL DEFENDANTS.

Defendants argue the proposed charges against the individual defendants fail. This order agrees in part.

Though the corporate form does not protect officers from their own tortious conduct, it usually insulates them from liability for corporate dealings. *See Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 507–08, 723 P.2d 573 (1986). Thus, "[t]he concept of vicarious liability has no application to actions brought under the unfair business practices act. A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate [S]ection 17200 or 17500." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (internal quotations and citations omitted).

The complaint names RJ Pittman, Dave Gausebeck, Matt Bell, Carlos Kokron, Peter Hebert, Jason Krikorian, and Mike Gustafson as officers with direct or indirect control over defendant Matterport, but *never again uses their names*, much less alleges any actions they took to perpetrate the alleged wrongdoing. The amended complaint leaves us no basis to discern individual conduct, so the Section 17200, 17500, breach of the implied covenant of

good faith and fair dealing, California Seller Assisted Marking Plan, and Illinois Consumer Fraud claims fail against the named directors.

But the vicarious Illinois Business Opportunity law claim survives as to these directors. It provides that:

> Every person who directly or indirectly controls a person liable under Section 5-120 or 5-125 of this Law . . . is also liable jointly or severally with and to the same extent as such person, unless the person liable under this Section proves that he or she did not know, and in the exercise of reasonable care could not have known of the existence of the facts constituting the alleged liability.

815 ILCS 602/5-125. Whether such officers knew or should have known of Matterport's liability raises factual questions that shall be deferred until after discovery.

This order notes, however, that defendants began this argument with a purported citation to the previous order, alleging that it "dismissed Plaintiff's claims against the Individual Defendants because Plaintiff 'failed to plead facts to state a claim against the Individual Defendants'" (Dkt. No. 43 at 7). The prior order included no such language and did not so hold (Dkt. No. 38). In the future, defendants shall please be honest in quoting previous orders.

### 5. FORMS OF RELIEF.

Defendants object to the amended false advertising claim seeking damages. Sections 17200 and 17500 offer equitable relief, not damages. *Chowning v. Kohl's Dep't Stores*, 735 Fed. App'x 924, fn. 1 (9th Cir. 2018); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144, 63 P.3d 937 (2003). To this extent, the claim fails.

Defendants next contend plaintiff may not seek injunctive or declaratory relief. Again, Sections 17200 and 17500 offer equitable relief. *See Korea Supply*, 29 Cal. 4th at 1144. The proposed amendments allege largely past conduct, but do also permit the plausible inference that defendants' misconduct continues to affect plaintiffs and other MSPs. If plaintiff prevails on the merits, we will craft appropriate relief within the statutory bounds.

Defendants also challenge the claim for punitive damages. The Illinois Supreme Court has blessed awards of punitive damages for willful violations of the Illinois Consumer Fraud

Act, the basis of plaintiff's punitive damages claim here. *See Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 80–81, 643 N.E.2d 734 (1994). This claim may proceed.

### 6. PLEADINGS ON INFORMATION AND BELIEF.

Defendants challenge the proposed compliant for its pleading on information and belief. But they challenge no specific allegations we should disregard, nor state why.

### CONCLUSION

To the extent above, the motion to amend is **GRANTED**. The Section 17200 and 17500 claims survive. Defendants did not substantively challenge the implied covenant, Illinois Consumer Fraud, Illinois Business Opportunity Law, or California Seller Assisted Marketing Plan claims in their papers. These claims also survive. As before, claims arising outside of California or Illinois law are dismissed with prejudice for lack of standing. And, claims against the named directors fail with the sole exception of the Illinois Business Opportunity Sales Law claim, which provides for such liability.

**IT IS SO ORDERED.**

Dated: February 4, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10