UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN STEMMELIN,<br><br>   Plaintiff,<br><br>   v.<br><br>MATTERPORT, INC., et al.,<br><br>   Defendants. | No. C 20-04168 WHA<br><br>**ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this false and deceptive advertising action, defendants move for partial summary judgment regarding plaintiff's Section 17200, Section 17500, and implied covenant claims, as well as plaintiff's requested equitable relief. To the following extent, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Defendants, Matterport, Inc., and its officers (together, "Matterport"), market "3D cameras that create 3D models of real-world places, which have many potential applications, including in connection with real estate sales." Supporting these cameras, Matterport also offers services such as software for three-dimensional image manipulation and cloud storage. Relevant here, Matterport also developed a Matterport Service Partner (MSP) program as a

way for individuals that purchased a camera to start their own business selling 3D scans taken using the camera.

Plaintiff John Stemmelin of Illinois saw Matterport's ads for the MSP program around January 2017 and purchased his first camera in February. In May, he applied for the MSP program. Matterport's MSP ads allegedly made several material misrepresentations and omissions regarding how the program could help members build their own "lucrative, self-owned business." After many hours learning to use the cameras and attempting to start his own 3D scanning business, Stemmelin had spent tens of thousands of dollars but had little to show for it.

Stemmelin brought this lawsuit as a putative class action in June 2020, alleging violations of, among other claims, unfair and false advertising laws as well as numerous states' business opportunity laws. A November 2020 order granted defendants' motion to dismiss (Dkt. No. 38). A later order granted in part Stemmelin's motion for leave to amend his complaint. The remaining claims alleged violations of: (1) California Civil Code Section 17200 and Section 17500; (2) the Illinois Consumer Fraud Deceptive Business Practices Act (ICFA); (3) the Illinois Business Opportunity Sales Law (BOSL); (4) the California Seller-Assisted Marketing Plan Act (SAMP Act); and (5) breach of the implied covenant of good faith and fair dealing. Only the BOSL claim survived as to the named directors (Dkt. No. 53).

A March 2022 order denied Stemmelin's motion to certify an Illinois class and a national class (Dkt. No. 136). Matterport now moves for partial summary judgment regarding Stemmelin's Section 17200 and Section 17500 claims, his implied covenant claim, and the equitable relief he seeks. In his opposition, Stemmelin voluntarily withdrew his BOSL and ICFA claims, which Matterport does not contest (Dkt. No. 166). This order follows full briefing and oral argument.

**ANALYSIS**

Summary judgment is appropriate if there is no genuine dispute of material fact, those facts that may affect the outcome of the suit. "[T]he substantive law's identification of which facts are critical and which facts are irrelevant . . . governs." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247–49 (1986). A genuine dispute contains sufficient evidence such that a reasonable jury could return a verdict for the nonmoving party. *Ibid.* "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). But "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). Furthermore, where the nonmoving party bears the burden of proof on a given issue, summary judgment is appropriate if the moving party demonstrates an absence of evidence to support the nonmoving party's position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

1. *SONNER* AND THE INADEQUATE-REMEDY-AT-LAW DOCTRINE.

Matterport argues Stemmelin's Section 17200 and Section 17500 claims fail because he has an adequate remedy at law, citing for support our court of appeals' recent decision *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). This order disagrees.

The plaintiff in *Sonner* asserted claims under the CLRA and Section 17200 but, on the eve of trial, strategically dropped her CLRA damages claim and sought only equitable restitution instead. Plaintiff argued that California had abrogated its inadequate-remedy-at-law doctrine for claims arising out of the CLRA and Section 17200. *Id.* at 838–39. *Sonner* nevertheless held that "the traditional principles governing equitable remedies in *federal courts*, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 844 (emphasis added).

Stemmelin says legal damages would not provide an adequate remedy and he is entitled to equitable restitution because his equitable claims are based on different conduct than his legal claims (Opp. 8). True enough, *Sonner* premised its conclusion on that logic: "Sonner concedes that she seeks the same sum in equitable restitution as . . . she requested in damages to compensate her for the same past harm. Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete . . . ." *Id.* at 844; s*ee also In re*

3

1  *JUUL Labs, Inc., Marketing Sales Practices, & Prods. Liability Litig.*, 497 F. Supp. 3d 552,
2  638–39 (N.D. Cal. 2020) (Judge William H. Orrick).

3  However, Stemmelin can only make this argument because he dropped his ICFA claim,
4  which authorized a damages award. He concedes his Section 17200 and Section 17500 claims
5  are based upon the same conduct as his ICFA claim (Opp. 10).

6  Stemmelin explains, however, that all the relevant contracts here have California choice-
7  of-law provisions, and his Illinois claims were simply inapplicable remnants of when he
8  initially filed a complaint in that state. He voluntarily dismissed that complaint after
9  Matterport moved to dismiss based on choice-of-law issues (*id.* at 1–2). Matterport is a
10 resident of California. Furthermore, Stemmelin signed three contracts with Matterport to
11 become an MSP. All three stated that the agreement would be governed by California law,
12 without reference to its conflict-of-law provisions.[*]

13 California favors enforcement of choice-of-law provisions. A reasonable basis exists for
14 the choice of California law. Matterport cannot now dispute the applicability of its own
15 contract provisions or California's interest in having its law apply to Matterport. *See Wash.*
16 *Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 916 (2001); *Cimoli v. Alacer Corp.*, 2022 WL
17 580789, at *3–6 (N.D. Cal. Feb. 25, 2022) (Judge Beth Labson Freeman). Consequently,
18 inasmuch as California law applies, Stemmelin's withdrawal of his improper ICFA claim does
19 not pose the same problems as those in *Sonner*, where the plaintiff withdrew otherwise valid
20 claims seeking damages in order to solely seek restitution as a matter of trial strategy. This
21 order concludes that, because choice-of-law considerations preclude his ICFA claim,
22 Stemmelin's Section 17200 and Section 17500 claims address different conduct than his other

---

[*] Specifically, paragraph 11.3 of the cloud subscription agreement stated: "This Agreement shall be interpreted in accordance with the laws of the state of California, USA without reference to its conflict of law provisions" (Dkt. No. 32-2 at 35–36). Section 17 of the Matterport terms of use recited: "These Terms shall be governed by and construed in accordance with the laws of the State of California, without giving effect to any principles of conflicts of law." (*id.* at 58). Section 12 of the MSP terms and conditions similarly stated: "These Terms shall be governed by the laws of the State of California, without regard to its conflict of law rules" (*id.* at 68).

4

claims seeking legal damages. Stemmelin lacks an adequate remedy at law and may seek equitable restitution.

Matterport's other arguments do not require a different conclusion. Stemmelin may not explicitly use the phrase "inadequate remedy at law" in his pleading, but he need not use those words as some talismanic charm. There is no magic words test. *E.g.*, *Tripp v. Clark Cty.*, 2020 WL 8084998, at *3 (D. Nev. Sept. 16, 2020) (Judge Brenda Weksler) (same). Stemmelin's allegations indicate that legal remedies would prove inadequate.

Matterport also contends that Stemmelin's "SAMP Act claim is *essentially* the same" as his Section 17200 and Section 17500 claims (Reply Br. 2, emphasis added). Recall, California's Seller Assisted Marketing Plan Act provides a private right of action for those harmed by a seller-assisted marketing plan, wherein a business sells goods or services to a purchaser so that the purchaser can peddle those goods or services. Cal Civ. Code §§ 1812.200 *et seq*. Matterport, however, concedes that the misrepresentations and omissions prohibited by the SAMP Act are not coextensive with all the misrepresentations and omissions Stemmelin alleges in his complaint. It goes on to argue that "even if the conduct alleged was not exactly the same, Plaintiff still has an adequate remedy at law for all of his claims in the form of damages" (Reply Br. 3). But if the SAMP Act does not cover some of the alleged misconduct, then it leaves Stemmelin without a remedy as to such misrepresentations. Should this order grant the instant motion, Matterport would undoubtedly turnaround and argue at trial that the SAMP Act does not cover all of the misrepresentations and omissions alleged by Stemmelin.

Although the parties focus on restitution, the same reasoning recited above applies to other forms of equitable relief such as prospective injunctions. *See also Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (Judge Edward M. Chen). In sum, Stemmelin may seek equitable relief, including restitution, because he lacks an adequate remedy at law.

2.  **STANDING TO SEEK PROSPECTIVE, EQUITABLE RELIEF.**

Matterport next argues that Stemmelin lacks Article III standing to seek prospective, equitable relief. All plaintiffs in federal court must demonstrate Article III standing for each

form of relief that they seek, *e.g.*, an injunction or declaratory relief. To establish standing, a plaintiff must show: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendants; and (3) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203, 2208, 2210 (2021).

Stemmelin originally sought injunctive relief prohibiting Matterport from: (1) advertising its cameras using any misrepresentations or omissions related to the MSP program; (2) making any representations about the 3D scanning camera business opportunity while out of compliance with the BOSL (now withdrawn) and SAMP Act; and (3) "competing against MSPs for 3D scanning business" (Prayers for Relief, First Amd. Compl.). Plaintiff also seeks declaratory relief that he is the owner of his scanned images (*id.* at ¶ 122). In his opposition, Stemmelin stated that he no longer seeks the first two types of relief because Matterport is no longer accepting new members into the MSP program (Opp. 12). This order accordingly reviews the latter two requests for equitable relief.

*First*, this order finds Stemmelin has Article III standing to seek an injunction prohibiting Matterport from competing against MSPs for 3D scanning business. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 141 S. Ct. at 2210. In his deposition, Stemmelin testified:

> Q. And who did you make a sales pitch to?
>
> A. I don't recall any individual names. It was over the phone. I was never able to schedule demos. . . . At least once I've been told they bought their own camera. At least once I've been told that people are using Matterport Capture Services

(Stemmelin Dep. 44–45, Dkt. No. 147-2). Matterport does not contest that it continues to operate its capture services, its in-house service that performed ostensibly the same function as MSPs. At this posture, this evidence demonstrates an adequate risk of future harm. Stemmelin has standing to seek this prospective relief.

Matterport's true issue here concerns the possible breadth of the requested injunction. It argues: "Nor has [Stemmelin] shown that Matterport competes in his specific geographic area, or competes for the same clients or business. Plaintiff also fails to show that he can or will actually compete in the market or serve the clients' needs if Matterport does not compete with him" (Reply Br. 6). As the reader will recall, Stemmelin lives in Illinois. He does not represent a nation-wide class of similarly situated individuals, a prior order denied his class certification motion. "Our Supreme Court has cautioned [in *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)] that 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs' before the court. This rule applies with special force where there is no class certification." *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) (citation omitted). Matterport's concern about a hypothetical imposition of an overbroad injunction in the future has no bearing on whether Stemmelin has met the requirements for standing to seek an injunction in the first place. He has. Matterport's arguments regarding the appropriate scope of any injunction, should one be warranted, must await another day. (The Sherman Act may have something to say about eliminating competition.)

*Second*, Stemmelin does not have standing to seek declaratory relief that "he is the owner of his scanned images." This order finds this declaratory relief request somewhat confounding. Stemmelin only seeks this relief in passing in the context of his Section 17500 false advertising claim (First Amd. Compl. ¶¶ 119, 122). He does not mention it in his prayer for relief. The only other related allegation is a nominal reference to intellectual property in his Section 17200 claim (*id.* ¶ 109), or other passing references to how images are stored (*id.* ¶¶ 33–34). But he does not assert a copyright claim. If there were a genuine dispute over the meaning of the MSP contracts as to ownership of the images then Stemmelin would have standing to raise the issue, but no such dispute is set forth in the pleading and the need for such relief simply comes out of left field with no anchoring pleadings.

In sum, Stemmelin has Article III standing to seek injunctive but lacks standing to seek the declaratory relief he requests in this action.

### 3. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Finally, Matterport argues it is entitled to summary judgment on the implied covenant of good faith and fair dealing claim because the agreement with Stemmelin expressly authorized its conduct. This order disagrees.

Under California law, "there is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960) (citations omitted). Nevertheless, "[i]t is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992). Matterport argues this exception to the implied covenant applies here.

The MSP program terms and conditions stated: "Matterport may from time to time provide leads and/or marketing assistance to Partners" (MSP T&C § 1, Dkt. No. 32-2 at 61). Stemmelin accordingly argues "Matterport has unfairly frustrated the purpose of the agreement by directly competing with MSPs by selling cameras to prospective leads and clients of MSPs" (Opp. 18; *see also* First Am. Compl. ¶ 128). As Matterport points out, however, the agreement also contains a no-warranty provision:

> MATTERPORT DOES NOT REPRESENT OR WARRANT: (a) THAT THE PROGRAM WILL MEET YOUR NEEDS OR REQUIREMENTS; (b) THAT THE PROGRAM WILL INCREASE YOUR BUSINESS OR REVENUE; OR (c) THE NUMBER [sic] LEADS THAT THE PROGRAM WILL GENERATE FOR YOUR BUSINESS.

(MSP T&C § 7). The only proper reading of (c) is that Matterport does not represent or warrant the number "of" leads the program would generate. Matterport says: "This [no-warranty] language indicates that Matterport had discretion to provide leads and/or marketing assistance, not that Matterport was required to do so" (Br. 10).

Given the language in Section 1 about providing leads and the context of the agreement as a whole, ambiguity exists about whether the no-warranty provision for the number of leads means that Matterport can provide no leads at all. Stemmelin also presented evidence that

8

Matterport advertised that it would provide MSPs pre-qualified, local leads (*e.g.*, Dkt. No. 110 at 9). *See Moore v. Wells Fargo Bank, N.A.*, 39 Cal. App. 5th 280, 287–88 (2019) (considering extrinsic evidence to review ambiguity). Moreover, Stemmelin does not merely complain about the *number* of leads, as Matterport intimates. Rather, his claim also addresses the *quality* of leads as well as Matterport's conduct once it provided a potential lead to an MSP (such as stealing that customer away). Matterport's no-warranty provision is thus not coextensive with the conduct Stemmelin has asserted violates the implied covenant.

When a contract does not expressly permit certain conduct, "[d]ifficulty arises in deciding whether such conduct, though not prohibited, is nevertheless contrary to the contract's purposes and the parties' legitimate expectations." *Avidity Partners, LLC v. California*, 221 Cal. App. 4th 1180, 1204 (2013). That problem presents itself here. This order finds further evidence on these issues necessary. Matterport has failed to demonstrate there is no genuine dispute of material fact, so it's summary judgment motion as to Stemmelin's implied covenant claim fails.

## CONCLUSION

In sum, Matterport's motion is **GRANTED IN PART** and **DENIED IN PART**. Matterport's motion for summary judgment as to Stemmelin's Section 17200 and Section 17500 claims is **DENIED**. Because Stemmelin lacks Article III standing for the declaratory relief he seeks, Matterport's motion as to that remedy is **GRANTED**. But Matterport's summary judgment motion as to Stemmelin's request for injunctive relief is **DENIED**. Finally, Matterport's motion as to the claim for breach of the implied covenant of good faith and fair dealing is also **DENIED**.

**IT IS SO ORDERED.**

Dated: August 10, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE