Thomas A. Zimmerman, Jr. (admitted *pro hac vice*)
*tom@attorneyzim.com*
Sharon A. Harris (admitted *pro hac vice*)
*sharon@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
*firm@attorneyzim.com*

Attorneys for Plaintiff John Stemmelin and all others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN STEMMELIN, on behalf of himself and all other persons similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTERPORT, INC., a Delaware corporation; RJ PITTMAN; DAVE GAUSEBECK; MATT BELL; CARLOS KOKRON; PETER HEBERT; JASON KRIKORIAN; and MIKE GUSTAFSON,<br><br>                    Defendants. | Case No. 3:20-cv-04168-WHA<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF A FED. R. CIV. P. RULE 23(B)(2) CLASS**<br><br>Date:   October 13, 2022<br>Time:  8:00 a.m.<br>Judge: William Alsup<br>Ctrm:  12 (19th Floor)<br><br>Complaint filed:      June 24, 2020<br>Trial date:             January 30, 2023 |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on October 13, 2022 at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 12 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable William Alsup presiding, Plaintiff John Stemmelin ("Plaintiff"), pursuant to Federal Rules of Civil Procedure 23(a) and  23(b)(2), will and hereby does move the Court for an Order certifying this action as a class action.

Plaintiff respectfully requests that the Court certify the following injunctive relief Class as to Plaintiff's claims under California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200-17800 *et seq.*, and California's False Advertising Law ("FAL"), Cal Bus. & Prof. Code §§ 17500 *et seq.*:

> All persons in the United States who, within the applicable statute of limitations, applied online through Matterport's website and became a Matterport Service Partner ("MSP"), and incurred expenses to operate their MSP business.

Excluded from the Class are: (1) Defendants and Defendants' agents; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

Plaintiff will also move for an Order appointing Plaintiff as Class Representative, and the law firm of Zimmerman Law Offices, P.C. as Class Counsel for the Class defined above.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the documents in the record in this action; and on such other matters as may be presented before or at the hearing of the motion.

ZIMMERMAN LAW OFFICES, P.C.

Dated: August 26, 2022          By:   /s/ Thomas A. Zimmerman, Jr.
                                      Thomas A. Zimmerman, Jr.
                                      Sharon A. Harris

                                Attorneys for Plaintiff JOHN STEMMELIN and the
                                putative Class

- 1 -

Thomas A. Zimmerman, Jr. (admitted *pro hac vice*)
*tom@attorneyzim.com*
Sharon A. Harris (admitted *pro hac vice*)
*sharon@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
*firm@attorneyzim.com*

Attorneys for Plaintiff John Stemmelin and all others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN STEMMELIN, on behalf of himself and all other persons similarly situated, | ) Case No. 3:20-cv-04168-WHA |
| | ) |
| | ) **MEMORANDUM OF POINTS AND** |
| Plaintiff, | ) **AUTHORITIES IN SUPPORT OF** |
| | ) **PLAINTIFF'S MOTION FOR** |
| v. | ) **CERTIFICATION OF A FED. R. CIV. P.** |
| | ) **RULE 23(B)(2) CLASS** |
| MATTERPORT, INC., a Delaware corporation; RJ PITTMAN; DAVE GAUSEBECK; MATT BELL; CARLOS KOKRON; PETER HEBERT; JASON KRIKORIAN; and MIKE GUSTAFSON, | ) |
| | ) Date:   October 13, 2022 |
| | ) Time:  8:00 a.m. |
| | ) Judge:  William Alsup |
| | ) Ctrm:  12 (19th Floor) |
| | ) |
| Defendants. | ) Complaint filed:     June 24, 2020 |
| | ) Trial date:            January 30, 2023 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

     A.      Pursuant to Fed. R. Civ. P. Rule 23(c)(1)(C), a Denial of Class Certification
         May Be Altered or Amended Before Final Judgment ...............................................1

     B.      The Proposed Injunctive Relief Class Satisfies the Requirements for
         Certification .............................................................................................................2

     C.      Consideration of this Motion Does Not Prejudice Defendants..............................4

II.     PROCEDURAL HISTORY AND STATEMENT OF FACTS...........................................5

     A.      Procedural History ..................................................................................................5

     B.      Statement of Facts ..................................................................................................6

         1.      What Matterport Offers to MSPs ...............................................................6

         2.      Matterport's Website ..................................................................................7

         3.      Becoming an MSP .......................................................................................8

         4.      Dolores "Dee" Johnson...............................................................................9

         5.      Misrepresentations .....................................................................................9

         6.      Omissions ..................................................................................................13

III.    LEGAL STANDARDS ..................................................................................................16

     A.      Requirements for a Rule 23(b)(2) Class ..............................................................16

     B.      Plaintiff's UCL and FAL Claims on Behalf of the Injunctive Relief Class ..........16

IV.    LEGAL ARGUMENT....................................................................................................17

     A.      The Requirements of Rule 23(a) Are Met ............................................................18

         1.      Rule 23(a)(1)—Numerosity .....................................................................18

         2.      Rule 23(a)(2)—Commonality...................................................................19

         3.      Rule 23(a)(3)—Typicality .......................................................................21

         4.      Rule 23(a)(4)—Adequacy........................................................................21

     B.      The Requirements of Rule 23(b)(2) Are Met .......................................................22

V.     CONCLUSION...............................................................................................................23

Memorandum Of Points And Authorities In Support of Plaintiff's Motion for Certification of a Fed. R. Civ. P.
Rule 23(b)(2) Class                                                                    Case No. 3:20-CV-04168-WHA

1

## TABLE OF AUTHORITIES

2

**_Cases_**

3

*Alcantar v. Hobart Serv.*,
   800 F.3d 1047 (9th Cir. 2015) ....................................................................................19

4

*B.K. by next friend Tinsley v. Snyder*,
   922 F.3d 957 (9th Cir. 2019) .....................................................................................22

5

6

*Bownes v. Washington*,
   2021 WL 3700867 (E.D. Mich. 2021) ........................................................................1

7

*Campbell v. PricewaterhouseCoopers, LLP*,
   253 F.R.D. 586 (E.D. Cal. 2008), adhered to, 287 F.R.D. 615 (E.D. Cal. 2012) .......................4

8

9

*Carrow v. FedEx Ground Package Sys., Inc.*,
   2019 WL 7184548 (D.N.J. 2019) ................................................................................1

10

*Chowning v. Kohl's Dep't Stores, Inc.*,
   735 F. App'x 924 (9th Cir. 2018) ..............................................................................17

11

12

*Cody v. City of St. Louis*,
   No. 4:17-CV-2707 AGF, 2022 WL 1658787 (E.D. Mo. May 25, 2022) ...................2

13

*Committee on Children's Television, Inc. v. General Foods Corp.*,
   35 Cal.3d 197 (Cal. 1983) .........................................................................................17

14

15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir.1998) ..............................................................................19, 21

16

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .....................................................................................21

17

18

*Hargrove v. Sleepy's LLC*,
   974 F.3d 467 (3d Cir. 2020) ....................................................................................1, 2

19

*Hernandez v. Wells Fargo Bank, N.A.*,
   2020 U.S. Dist. LEXIS 15844 (N.D. Cal. Jan. 29, 2020) .........................................18

20

21

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) .....................................................................................19

22

*In re Initial Pub. Offering Sec. Litig.*,
   483 F.3d 70 (2d Cir. 2007)...........................................................................................2

23

*In re Tobacco II Cases*
   46 Cal.4th 298, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009) .........................................22

24

25

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015)....................................................................16, 18, 22

26

*Jama v. State Farm Fire & Cas. Co.*,
   339 F.R.D. 255 (W.D. Wash. 2021) .............................................................................3

27

28

Memorandum Of Points And Authorities In Support of Plaintiff's Motion for Certification of a Fed. R. Civ. P.
Rule 23(b)(2) Class                                    Case No. 3:20-CV-04168-WHA

*Lynch v. Matterport, Inc., et al.*,
   No. C 22-03704 (N.D. Cal.) ........................................................................................5

*Markson v. CRST Int'l, Inc.*,
   No. 5:17-CV-01261-SB-SP, 2022 WL 1585754 (C.D. Cal. Apr. 6, 2022) .................................2

*McGill v. Citibank*, N.A.,
   2 Cal. 5th 945, 393 P.3d 85 (2017) .............................................................................22

*Pecover v. Elec. Arts Inc.*,
   2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21, 2010) .........................................................21

*Postpichal v. Cricket Wireless, LLC*,
   2021 U.S. Dist. LEXIS 146166 (N.D. Cal. Aug. 4, 2021) ...........................................................19

*Ries v. Ariz. Bevs. USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................17

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .........................................................................19, 22, 23

*San Francisco Baykeeper v. City of Sunnyvale*,
   5:20-CV-00824-EJD, 2022 WL 1914313 (N.D. Cal. June 3, 2022) ...........................................4

*Shields v. Walt Disney Parks & Resorts US, Inc.*,
   279 F.R.D. 529 (C.D. Cal. 2011) ...........................................................................22, 23

*Stockwell v. City & Cty. of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014) ...................................................................................19

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ..................................................................................... 16

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir.1998) ..............................................................................16, 22

**Statutes, Regulations, and Rules**

Fed. R. Civ. P. Rule 23(a)(1) ......................................................................................18, 19

Fed. R. Civ. P. Rule 23(a)(2) ...........................................................................................19

Fed. R. Civ. P. Rule 23(a)(3) ...........................................................................................21

Fed. R. Civ. P. Rule 23(a)(4) ...........................................................................................21

Fed. R. Civ. P. Rule 23(b)(2) ..................................................................................... *passim*

Fed. R. Civ. P. Rule 23(b)(3) ..............................................................................1, 2, 16, 20

Fed. R. Civ. P. Rule 23(c)(1)(C) ...................................................................................1, 4

Fed. R. Civ. P. Rule 201(b) ................................................................................................ 16

Fed. R. Civ. P. Rule 201(c) ................................................................................................ 16

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 16

Cal. Bus. & Prof. Code § 17208 ........................................................................................ 18

Cal. Bus. & Prof. Code § 17500 ................................................................................... 17, 18

Cal. Code Civ. P. § 338(a) ................................................................................................. 18

***Other Authorities***

3 Newberg on Class Actions § 7:27 (5th ed.) ...................................................................... 4

7A Wright, Miller & Kane, Federal Practice & Procedure § 1775 (2d ed.) ................................ 22

iv

Memorandum Of Points And Authorities In Support of Plaintiff's Motion for Certification of a Fed. R. Civ. P.
Rule 23(b)(2) Class                                                    Case No. 3:20-CV-04168-WHA

# I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff JOHN STEMMELIN ("Plaintiff") alleges Defendants made misrepresentations and omissions regarding their Matterport Service Partner ("MSP") program. Specifically, Matterport did not inform anyone that it would directly compete against MSPs for 3D scanning business. Recently, the Court found that Plaintiff "has Article III standing to seek an injunction prohibiting Matterport from competing against MSPs for 3D scanning business," but noted that Plaintiff does not represent a Class because a prior order denied his motion for class certification. *See* Dkt. No. 168, Order Re Defendants' Motion for Summary Judgment, pp. 6-7. The scope and breadth of any injunction will be determined in the future should the Court grant injunctive relief. *Id.*, p. 7. Because of this recent ruling, Plaintiff now seeks certification of an injunctive relief class pursuant to Fed. R. Civ. P. Rule 23(b)(2) so that classwide injunctive relief can be considered. *See* Fed. R. Civ. P. Rule 23(b)(2).

## A.   Pursuant to Fed. R. Civ. P. Rule 23(c)(1)(C), a Denial of Class Certification May Be Altered or Amended Before Final Judgment

While the Court previously denied Plaintiff's motion for class certification pursuant to Fed. R. Civ. P. Rule 23(b)(3) for lack of predominance, an order that denies class certification may be altered or amended before final judgment. *See* Fed. R. Civ. P. Rule 23(c)(1)(C). Rule 23(c)(1)(C) contemplates "multiple bites at the apple throughout litigation" without additional requirements, and "[t]he best course of action is to treat renewed motions like any other for class certification, and to apply the usual Rule 23 standard." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020); *Bownes v. Washington*, 2021 WL 3700867, at *4 (E.D. Mich. 2021); *Carrow v. FedEx Ground Package Sys., Inc.*, 2019 WL 7184548, at *4 (D.N.J. 2019) ("Because the concerns highlighted in the Court's prior Opinion do not apply to Plaintiffs' present theory of liability, the Court believes the best course of action is to treat the present Motion like any other for class certification, and to apply the usual Rule 23 standard.").

While district courts in the Ninth Circuit usually apply a motion for reconsideration standard requiring new evidence or a change in law for renewed motions for class certification to be considered, other courts specifically construing Rule 23 have found that a reconsideration standard should *not* apply. The Third Circuit analyzed Rule 23 and held that "Plaintiffs can succeed on a renewed motion for class certification if they more clearly define their proposed

class even if there has been no change in the law and no new evidence produced." *Hargrove*, 974 F.3d at 477. Other circuits have also recognized that district courts have "ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial." *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007). While the Eighth Circuit has not decided this precise issue, a district court in that circuit predicts "that the Eighth Circuit would grant similar latitude to district courts in deciding whether to consider a renewed motion and would likewise focus on the merits of the renewed motion under Rule 23 rather than more stringent standards associated with typical motions to reconsider." *Cody v. City of St. Louis*, No. 4:17-CV-2707 AGF, 2022 WL 1658787, at *2–3 (E.D. Mo. May 25, 2022) ("The Eighth Circuit has not decided what standard applies when reevaluating an initial denial of a motion for class certification."). Like the Eighth Circuit, the Ninth Circuit also has not ruled on this precise issue. *Markson v. CRST Int'l, Inc.*, No. 5:17-CV-01261-SB-SP, 2022 WL 1585754, at *2 (C.D. Cal. Apr. 6, 2022).

Here, because Plaintiff addresses the deficiencies the Court found with the prior class definition and seeks certification under a new theory, the Court should exercise its discretion and consider this motion under the usual Rule 23 standard, rather than under a motion for reconsideration standard.

## B.     The Proposed Injunctive Relief Class Satisfies the Requirements for Certification

While the Court previously denied Plaintiff's motion for class certification pursuant to Fed. R. Civ. P. Rule 23(b)(3) based, in part, on lack of predominance, Plaintiff's renewed motion seeks certification of an amended class definition pursuant to Rule 23(b)(2), which does *not* require predominance. The revised class definition is narrower, seeks to cure the alleged deficiencies found by the Court, and seeks an injunctive relief class. Additionally, following the Court's ruling on Defendants' Motion for Summary Judgment, certification of a Rule 23(b)(2) class would allow the Court to consider a classwide injunction prohibiting Matterport from competing with MSPs for 3D scanning business.

Pursuant to Fed. R. Civ. P. Rule 23(b)(2), Plaintiff seeks certification of the following class ("Class"):

1
2
3

> All persons in the United States who, within the applicable statute of limitations, applied online through Matterport's website and became a Matterport Service Partner ("MSP"), and incurred expenses to operate their MSP business.

4
5
6
7
8
9
10
11
12
13
14

This new definition addresses the Court's concerns. The Court previously found that "although all MSPs were exposed to the alleged misrepresentations on Matterport's website when they completed their MSP applications, that does not mean they were necessarily exposed to any misstatements *before* they purchased their camera, the foundation for economic injury here." Dkt. 136, Order re Motion for Class Certification, p. 11 (emphasis added). The Court also found that "variables exist that necessitate individualized inquiries into the economic injury purportedly suffered by putative class members who relied on Matterports's misleading statements. Assuming the putative class member was exposed to the MSP advertisements, did they rely on those advertisements to purchase a camera? Or had they already purchased a camera and they relied upon the Matterport's alleged deception only to join the free MSP program?" *Id.*, p. 12.

15
16
17
18
19
20
21
22
23
24
25
26

The proposed injunctive relief Class cures these deficiencies identified by the Court. First, by defining the Class as those who "applied online through Matterport's website," it limits the Class to those people who would have been exposed to the misrepresentations and omissions on the MSP webpages before applying to be an MSP. Second, by limiting the Class to those people who "incurred expenses to operate their MSP business," it limits the Class to those people who not only were exposed to those misrepresentations and omissions, but also relied upon them and invested in the supposed "lucrative business opportunity." In other words, under the new Class definition, the purchase of the camera is no longer the "foundation for economic injury." *Id.*, at p. 11. This removes the Court's concern about the  "attenuated" relationship between the purchase of the camera and the MSP program. *Id.*, at p. 4. Those people who "incurred expenses to operate their MSP business" relied on Matterport's misrepresentations and omissions, otherwise they would not have incurred such expenses.

27
28

Should the Court find that Plaintiff's proposed Class definition does not resolve the deficiencies, the Court can revise the Class definition on its own. *Jama v. State Farm Fire &*

- 3 -

*Cas. Co.*, 339 F.R.D. 255, 265 (W.D. Wash. 2021) (citing 3 Newberg on Class Actions § 7:27 (5th ed.) ("[W]hen a class definition is not acceptable, judicial discretion can be utilized to save the lawsuit from dismissal."); *see Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008), adhered to, 287 F.R.D. 615 (E.D. Cal. 2012) ("[C]ourts retain the discretion to alter an inadequate class definition.")).

### C.     Consideration of this Motion Does Not Prejudice Defendants

Although the instant request to certify a Rule 23(b)(2) class comes at a later stage in litigation, the Court should consider Plaintiff's motion because, should Plaintiff prevail on his individual claims, the Court will be considering the scope and breadth of any injunctive relief.

Plaintiff filed his original motion for class certification according to the schedule set and modified by the Court. *See* Fed. R. Civ. P. 16(b)(4). Therefore, Plaintiff is not asking the Court to modify its prior scheduling orders in any way, and Rule 16(b)'s "good cause" standard is inapplicable. Further, Rule 23(c)(1)(C) provides for consideration of class certification at any time before final judgment. If the Court finds that Plaintiff is required to show "good cause" for filing this motion, Plaintiff satisfies the requirement.

"Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *San Francisco Baykeeper v. City of Sunnyvale*, 5:20-CV-00824-EJD, 2022 WL 1914313, at *2 (N.D. Cal. June 3, 2022). As explained, Plaintiff is filing this motion now based upon the Court's ruling on Defendants' Motion for Summary Judgment finding that Plaintiff has "standing to seek an injunction prohibiting Matterport from competing against MSPs for 3D scanning businhess." Dkt. 168, Order Re Defendants' Motion for Summary Judgment, p. 6. Defendants will not be prejudiced by consideration of this motion because it will not necessitate any additional discovery or change the issues to be decided in this case in any material way, as injunctive relief has always been sought in this case. As the numeorus citations to the docket indicate, this motion is based upon most of the same evidence used in Plaintiff's original motion for class certification. None of the efforts that the parties have taken to date would be undone.

- 4 -

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Certification of a Fed. R. Civ. P. Rule 23(b)(2) Class                                         Case No. 3:20-cv-04168-WHA

Further, although this motion is brought at a later stage, there is enough time for this motion to be briefed, heard, and decided before trial (whenever that may occur). The Court granted Plaintiff's motion to continue the trial date, and this matter is set for trial in over five (5) months from now. *See* Dkt. No. 165 (docket entry setting trial for January 30, 2023). There is no date set for a pretrial conference. *Id.* And the parties have recently been notified that their civil case has a low priority of going to trial on schedule. *See* Dkt. No. 169, Request to Parties Re Trial. Thus, this motion will not interfere with the trial. Further, it would be more timely and efficient to determine this issue now, rather than in a subsequent proceeding, such as in the case deemed related to this case: *Lynch v. Matterport, Inc., et al.*, No. C 22-03704 (N.D. Cal.).

## II.   PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A.   Procedural History

Plaintiff filed this action on June 24, 2020, alleging violations of the disclosure and advertising requirements of the Illinois Business Opportunity Sales Law ("BOSL") and California's Seller-Assisted Marketing Plan Act ("SAMP Act"),[1] violation of California's Unfair Competition Law ("UCL"), and violation of California's False Advertising Law ("FAL"). A November 2020 order granted Defendants' motion to dismiss (Dkt. No. 38). A February 2021 order granted in part Plaintiff's motion for leave to amend his complaint. Plaintiff filed a First Amended Complaint ("FAC") on February 11, 2021 to allege additional causes of action for breach of the implied covenant of good faith and fair dealing, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

On December 24, 2021, Plaintiff filed a motion for class certification. On March 14, 2022, the Court denied Plaintiff's motion for class certification.

On June 16, 2022, Defendants filed their Motion for Summary Judgment or Partial Summary Judgment ("Summary Judgment Motion"). Dkt. No. 144. Plaintiff opposed the Summary Judgment Motion. Dkt. No. 147. Plaintiff argued that California law applies, and he voluntarily withdrew his Illinois claims, *i.e.*, his BOSL and ICFA claims. On August 10, 2022,

---

[1] The original complaint also asserted claims under the cognate laws of other jurisdictions, but the Court dismissed those claims reasoning that Plaintiff did not have standing to bring them. Dkt. 53.

the Court granted in part and denied in part Defendants' Summary Judgment Motion. *See* Dkt. No. 168, Order Re Defendants' Motion for Summary Judgment. The Court found that Plaintiff "has Article III standing to seek an injunction prohibiting Matterport from competing against MSPs for 3D scanning business." *See id.*, p. 6. The scope and breadth of the injunction will be determined in the future should the Court grant injunctive relief. *Id.*, p. 7. For that reason, Plaintiff now seeks certification of an injunctive relief class pursuant to Rule 23(b)(2) because Matterport's competition with MSPs for 3D scanning business affects not only Plaintiff, but also other putative Class members.

  **B. Statement of Facts**

   **1. What Matterport Offers to MSPs**

  Matterport sells 3D cameras to the public that create 3D scans of real-world places. Those 3D scans are uploaded to Matterport's Cloud Services, where the photographer can manipulate and finalize the scan, and share it with the photographer's customer. Through its uniform advertisements, promotional materials, in-person and telephonic solicitations, and website pages, Matterport offers a business opportunity—*i.e.*, the MSP program—to people who purchase its 3D cameras and subscribe to its Cloud Service Plan, as follows:

- The Matterport 3D camera is easy to use, and it is easy to learn and perform 3D scanning;

- Matterport will provide the training materials MSPs need to learn to operate the 3D camera and perform 3D scans;

- The MSP program is a lucrative business opportunity and MSPs will recoup their initial investment within a matter of months;

- Matterport will provide MSPs with pre-qualified local leads from businesses and individuals who are serious about purchasing 3D scanning services;

- Matterport will provide the tools and resources to ensure the success of the MSP's business.

  All of these representations are false. *See* Section II.B.5, Misrepresentations, *infra*.

Because these representations led Plaintiff and Class members to believe they were partners with Matterport and Matterport was going to help them succeed in the 3D scanning business, the representations helped conceal the omitted fact that Matterport would actually be competing with MSPs for 3D scanning business. Matterport was making these misrepresentations while enrolling people in the MSP program, selling them expensive cameras, and enrolling them in monthly Cloud hosting subscription services, but Matterport failed to inform prospective MSPs that:

- Matterport would compete against MSPs by selling 3D cameras to the MSPs' customers, such that the customers would no longer need the MSPs to do the scanning for them;

- Despite publicly announcing the withdrawal of a pilot program, Matterport surreptitiously continued to operate the program as part of a business model designed to compete against MSPs.

See Section II.B.6, Omissions, *infra*.

Matterport's competing with MSPs for 3D scanning business is a pattern or practice generally applicable to the Class as a whole and, therefore, appropriate for classwide injunctive relief.

### 2. Matterport's Website

The Court previously granted Plaintiff's request for judicial notice of archival versions of Matterport's website obtained via the Internet Archive's Wayback Machine.  *See* Dkt. 136, Order re Motion for Class Certification, p. 10, note 1; *see also* Dkt. 105, Plaintiff John Stemmelin's Request for Judicial Notice in Support of Motion for Class Certification.  There were four webpages on the Matterport website relating to the MSP program—the "Program Overview", "Benefits", "Apply Today", and "FAQs" pages. *See* Dkt. 100-12 (Trial Exhibit 1), Dkt. 101-8 (Trial Exhibit 45), Dkt. 101-9 (Trial Exhibit 46), Dkt. 101-10 (Trial Exhibit 47).[2] Plaintiff's counsel obtained a screenshot of the MSP program "Benefits" page when they were

---

[2] Trial Exhibits 1, 45, 46, 47 were in use on Matterport's website during various time periods, and they are virtually identical. The Court granted Plaintiff's request for judicial notice of these webpages, which were available on Wayback Machine. *See* Dkt. #136, Order re Motion for Class Certification, at note 1.

drafting the initial Complaint. Trial Exhibit 48. Kailyn Wilson[3] ("Wilson") testified that these were the "Program Overview", "Benefits", and *partial* "Apply Today" webpages that were in use on Matterport's website from the start of the MSP program on August 14, 2015 until Matterport stopped accepting new applications into the MSP program on November 27, 2019. Dkt. 100-3 (sealed), Deposition of Kailyn Wilson ("Wilson Dep."), 42:23-51:13 ("Program Overview" page), 51:20-58:1 ("Benefits" page), 58:4-62:6 ("Apply Today" page).[4]

"[A]ll MSPs were exposed to the alleged misrepresentations on Matterport's website when they completed their MSP applications." *See* Dkt. 136, Order re Motion for Class Certification, p. 11. However, Matterport's website omitted the fact that Matterport would be competing with MSPs for 3D scanning business.

### 3.   Becoming an MSP

To become an MSP, an individual had to apply on Matterport's website by either (1) clicking on the "Apply Today" link at the top of the "Program Overview" page, or (2) clicking on the "Apply to the Program" button near the bottom of the "Program Overview" page. *See*, Dkt. 100-12 (Trial Exhibit 1). Either way, the person would be navigated to the "Apply Today" page where they would fill-out an application to become an MSP.[5] Dkt. 101-4 (Trial Exhibit 33); Dkt. 100-1, Deposition of Linda Itskovitz ("Itskovitz Dep.") 23:15-24:16; Dkt. 100-2 (sealed), deposition of Daniel Fellars[6] ("Fellars Dep.") 38:17-40:11; Dkt. 99-7, Declaration of Douglas Meyers ("Meyers Decl."), ¶ 2 ("I enrolled in the MSP program by filling out a form on Matterport's website").

Also, to become an MSP, Matterport required the person to purchase a Matterport 3D

---

[3] Kailyn Wilson was Matterport's Rule 30(b)(6) representative to testify regarding *inter alia* Matterport's knowledge of the webpages on www.matterport.com for the MSP program, and all handouts and advertising of the MSP program. Dkt. 93-1; Dkt. 100-3, Wilson Dep. 9:6-20.

[4]  Matterport did not produce the MSP program "FAQs" page, and Plaintiff's counsel has been unable to independently find it.

[5] The application form is missing from the "Apply Today" webpage that Matterport produced.

[6]  Daniel Fellars was Matterport's Rule 30(b)(6) representative to testify regarding *inter alia* Matterport's sales practices, scripts, and talking points for the MSP program. Dkt. 93-1; Dkt. 100-2, Fellars Dep. 7:23-8:9. He worked at Matterport starting in April 2015, and held various sales positions within the company to the present, including training individuals within Matterport on sales techniques. Dkt. 100-2, Fellars Dep. 16:14-22:17.

1   camera and Cloud Service Plan. Dkt. 101-1 (Trial Exhibit 27), Dkt. 101-2 (Trial Exhibit 28),

2   Dkt. 101-4 (Trial Exhibit 33); Dkt. 100-2, Fellars Dep. 40:12-41:8, 43:12-20, 44:14-45:9; Dkt.

3   100-1, Itskovitz Dep. 27:2-8.

### 4.      Dolores "Dee" Johnson

5        Dolores "Dee" Johnson ("Johnson") has an undergraduate degree in math, and a master's

6   degree in computer science. Dkt. 100-4 (sealed), Deposition of Dolores Johnson ("Johnson

7   Dep.") 12:15:-13:22. She worked as a software and support engineer at Hewlett Packard,

8   manager of customer support at Elan Computer Group (desktop publishing software), ran two

9   concrete construction companies, and worked in customer support for various companies such as

10  Google and SafeBridge (pharmaceutical products). Dkt. 100-4, Johnson Dep. 14:7-15:14, 16:7-

11  20, 17:14-18:12. She worked in technical support at Matterport for its products and software

12  services from March 2017 – September 15, 2019. Dkt. 100-4, Johnson Dep. 19:1-20:13. After

13  leaving Matterport, she ran the technical support team at CubiCasa (3D scanning products). Dkt.

14  100-4, Johnson Dep. 22:1-23:6. Currently, Johnson has a bi-weekly podcast, and she helps MSPs

15  with technical support questions. Dkt. 100-4, Johnson Dep. 23:13-24:16. Johnson currently owns

16  shares of Matterport stock. Dkt. 100-4, Johnson Dep. 24:22-25:1.

17       While she worked at Matterport, Johnson frequently interacted with MSPs, and she

18  answered technical questions about Matterport products and software services on the Matterport

19  Official Users Group ("MOUG") and on a weekly Facebook Live session. Dkt. 100-4, Johnson

20  Dep. 20:14-21:25. There are numerous emails from MSPs and other Matterport customers

21  touting Johnson's technical skills on Matterport's cameras, Cloud Services, and 3D scanning.

22  Dkt. 100-4, Johnson Dep. 25:13-33:8; Dkt. 101-25 (Trial Exhibit 64), Dkt. 102-1 (Trial Exhibit

23  65), Dkt. 102-2 (Trial Exhibit 66), Dkt. 102-3 (Trial Exhibit 67), Dkt. 102-4 (Trial Exhibit 68),

24  Dkt. 102-5 (Trial Exhibit 69), Dkt. 102-6 (Trial Exhibit 70), and  Dkt. 102-7 (Trial Exhibit 71).

### 5.      Misrepresentations

26       Matterport made uniform false or misleading statements to entice Class members to

27  purchase its 3D cameras, subscribe to its Cloud Service Plan, become an MSP, and invest in a

28  Matterport 3D scanning business. These misrepresentations were uniform, as they were listed

- 9 -

on the MSP program webpages on Matterport's website, in sales presentations given by Matterport sales representatives, and on other Matterport marketing materials. Matterport's marketing team would re-use the same information in its various marketing materials. Dkt. 100-3, Wilson Dep. 122:17-123:24.

Matterport gave its sales representatives written, uniform talking points and flowcharts for all of the sales representatives to use when talking to prospective customers to sell Matterport's products and services, including when touting the benefits of the MSP program, and they would convey that standard text to prospective customers. Dkt. 100-3, Wilson Dep. 127:6-11, 129:13-131:8; Dkt. 100-2, Fellars Dep. 27:16-29:19, 31:19-33:7, 33:18-34:3, 35:3-14. This included providing its sales representatives with "objection handling scripts" to use to address concerns about Matterport products and services voiced by potential customers. Dkt. 100-3, Wilson Dep. 92:13-93:5; Dkt. 100-2, Fellars Dep. 81:10-15.

The FAC ¶¶ 46-47 generally alleges Matterport's misprestations, and five misrepresentations are more fully analyzed below. *See* Dkt. 115, Second Amended Compendium of Facts and Citations to Evidence in Support of Class Certification ("Compendium"), and Dkt. 123-3, Supplement to Second Amended Compendium of Facts and Citations to Evidence in Support of Class Certification ("Supplemental Compendium").

**MISREPRESENTATION #1:   The Matterport 3D camera is easy to use, and it is easy to learn and perform 3D scanning.**

This representation is contained in the Matterport marketing materials and sales representaives' scripts detailed in <u>Compendium</u>, Misrepresentation #1, ¶¶ 1-12; <u>Supplemental Compendium</u>, Misrepresentation #1, ¶¶ 1-2. Saying that the camera was easy to use, anyone can do 3D scanning, and most people are trained in under an hour was in the sales representatives' talking points when discussing the 3D camera with prospective customers. Dkt. 100-3, Wilson Dep. 88:19-90:18; Dkt. 100-2, Fellars Dep. 88:19-90:1. Johnson overheard Matterport sales representatives tell prospective MSPs that the camera was easy to use. Dkt. 100-4, Johnson Dep. 44:2-22. MSPs told Johnson that sales representatives told them that the camera was easy to use when they were trying to decide whether to become an MSP. Dkt. 100-3, Johnson Dep. 44:23-45:6.

Based on her 20+ years of working in technical support for various companies, it is Johnson's opinion that the Matterport camera and 3D scanning is *not* easy to use. Dkt. 100-4, Johnson Dep. 45:7-16, 47:13-17; Dkt. 103-16 (Trial Exhibit 107); Dkt. 99-6, Declaration of George Kenner ("Kenner Decl.") ¶ 6. It took Johnson at least six months to fully understand the Matterport camera and 3D scanning platform. Dkt. 100-4, Johnson Dep. 45:17-19. Johnson saw several responses to MSPs questions from the Matterport technical support team with the wrong technical information, and the majority of the Matterport technical support team did not understand the system. Dkt. 100-4, Johnson Dep. 46:9-47:1. Johnson states that a "pretty low" percentage of MSPs can do a good 3D scan with the Matterport camera. Dkt. 100-4, Johnson Dep. 47:2-12.

**MISREPRESENTATION #2:**   **Matterport will provide the training materials MSPs need to learn to operate the 3D camera and perform 3D scans.**

This representation is contained in the Matterport marketing materials and sales representaives' scripts detailed in <u>Compendium</u>, Misrepresentation #2, ¶¶ 13-15. Providing training materials to MSPs was included in the sales representatives' talking points to tout the benefits of the MSP program. Dkt. 100-2, Fellars Dep. 75:16-76:7; Dkt. 100-3, Wilson Dep. 114:1-115:3, 119:7-17.

Sybil Chen[7] ("Chen") developed ten "how to" training videos for all Matterport customers regarding the camera and scanning that were each about two minutes long on average. Dkt. 100-5, Deposition of Sybil Chen ("Chen Dep.") 13:23-14:18. However, Chen's training videos were not complete, Johnson was not able to find training materials to teach her how to competently do a 3D scan, there were no training materials on the "MSP Portal", and MSPs were training each other how to scan on MOUG. Dkt.100-4, Johnson Dep. 73:13-20, 74:5-75:18.

---

[7] Sybil Chen worked on the marketing team at Matterport from August 2015 – August 2018, where she focused on PR, content marketing, and video content creation. Dkt. 100-5, Chen Dep. 10:23-11:20, 12:10-14.

**MISREPRESENTATION #3:** **The MSP program is a lucrative business opportunity and MSPs will recoup their initial investment within a matter of months.**

This representation is contained in the Matterport marketing materials and sales representaives' scripts detailed in <u>Compendium</u>, Misrepresentation #3, ¶¶ 16-24. The amount of money that a person could potentially earn as an MSP was included in the sales representatives' talking points to tout the benefits of the MSP program. Dkt. 100-2, Fellars Dep. 74:22-75:15.

However, there are numerous complaints from MSPs that they were not making any money, and they were not able to recover a return on their investment. *See, e.g.,* Dkt. 102-8 (Trial Exhibit 72); Dkt. 103-16 (Trial Exhibit 107); Dkt. 103-17 (Trial Exhibit 108); Dkt. 99-6, Kenner Decl. ¶ 9; FAC ¶ 59.

**MISREPRESENTATION #4:** **Matterport will provide MSPs with pre-qualified local leads from businesses and individuals who are serious about purchasing 3D scanning services.**

This representation is contained in the Matterport marketing materials and sales representaives' scripts detailed in <u>Compendium</u>, Misrepresentation #4, ¶¶ 25-41; <u>Supplemental Compendium</u>, Misrepresentation #4, ¶ 3. Free pre-qualified local leads was included in the sales representatives' talking points to tout the benefits of the MSP program. Dkt. 100-2, Fellars Dep. 75:20-76:16; Dkt. 100-4, Johnson Dep. 68:15-24; FAC ¶ 46. Johnson overheard sales representatives tell this to prospective MSPs. Dkt. 100-4, Johnson Dep. 68:8-14.

The primary way that leads were collected by Matterport was through the Find a Photographer form on Matterport's website. Dkt. 100-2, Fellars Dep. 101:2-10. Referring leads to MSPs was done manually in the beginning, and then, starting in early 2017, Matterport used an automated algorithm to send leads to the three closest MSPs in proximity to the person who filled out the form. Dkt. 100-3, Wilson Dep. 104:5-105:5; Dkt. 100-1, Itskovitz Dep. 48:12-49:1; Dkt. 100-2, Fellars Dep. 102:5-22; Dkt. 103-13 (Trial Exhibit 104). However, Matterport did not pre-qualify the leads. Instead, the leads were automatically referred to the closest MSP regardless of who they were from.

There were numerous complaints from MSPs that they were not getting leads, and other MSPs complained that when they did get leads, the leads were mostly other MSPs or other

- 12 -

camera owners fishing for information, or someone asking for technical support. Dkt. 100-4, Johnson Dep. 68:25-69:10; Dkt. 100-3, Wilson Dep. 142:15-143:1; Dkt. 100-1, Itskovitz Dep. 41:1-16; Dkt. 99-7, Meyers Decl. ¶ 3; Dkt. 99-6, Kenner Decl. ¶ 7; Dkt. 102-8 (Trial Exhibit 72), Dkt. 103-18 (Trial Exhibit 109). Johnson was hearing complaints from MSPs about not getting pre-qualified leads up until she left Matterport in September 2019. Dkt. 100-4, Johnson Dep. 71:6-13.

**MISREPRESENTATION #5:  Matterport will provide the tools and resources to ensure the success of the MSP's business.**

This representation is contained in the Matterport marketing materials detailed in Compendium, Misrepresentation #5, ¶ 42-47; Supplemental Compendium, Misrepresentation #5, ¶ 4. However, Matterport did not provide any tools or resources for MSPs on the "MSP Portal" until November 3, 2017. Dkt. 100-9, Matterport's Suppl. Resp. to Plaintiff's Interrog., Set One, Nos. 5, 11; Dkt. 100-4, Johnson Dep. 72:3-8. Johnson is not aware of any Matterport tools or resources to ensure the success of an MSP's business prior to the launch of the MSP portal in November 2017. Dkt. 100-4, Johnson Dep. 72:9-18.

### 6.     Omissions

Nowhere in any of Matterport's written marketing and informational materials, or in the talking points for its sales representatives to use, did Matterport inform anyone that it would directly compete against MSPs. FAC ¶ 110 generally alleges Matterport's omissions, and two omissions are more fully analyzed below.

**OMISSION #1:  Matterport would compete against MSPs by selling 3D cameras to the MSPs' customers, such that the customers would no longer need the MSPs to do the scanning for them.**

This omission is shown in detail in Compendium, Omission #1, ¶¶ 48-54. Matterport had sales and revenue goals for camera sales. Dkt. 100-1, Itskovitz Dep. 48:5-7; Dkt. 100-2, Fellars Dep. 70:2-7. Matterport's sales representatives were incentivized with monetary compensation and commissions to sell cameras, and there were sales quotas on camera sales that the sales representatives had to meet. Dkt. 100-2, Fellars Dep. 68:14-69:5, 69:22-70:1; Dkt. 100-3, Wilson Dep. 134:3-7.

1    There were numerous complaints from MSPs about Matterport competing with MSPs by

2    contacting MSPs' customers to try to sell them a camera. Dkt. 99-7, Meyers Decl. ¶ 4; Dkt. 101-

3    15 (Trial Exhibit 52); Dkt. 101-17 (Trial Exhibit 54). MSPs told Johnson that Matterport was

4    competing with the MSPs by contacting the MSPs' customers and selling them cameras, as the

5    MSPs' customers would not need the MSPs anymore because the customers would do the

6    scanning themselves and the MSPs lost those people as customers. Dkt. 100-4, Johnson Dep.

7    57:16-58:13. The MSPs told Johnson that when they were deciding whether to become an MSP,

8    they thought Matterport was going to be their partner and Matterport never informed them that

9    Matterport was going to try to sell to their customers. Dkt. 100-4, Johnson Dep. 58:14-59:15.

10   **OMISSION #2:   Despite publicly announcing the withdrawal of a pilot program,
11                    Matterport surreptitiously continued to operate the program as part of a
                      business model designed to compete against MSPs.**

12   This omission is shown in detail in Compendium, Omission #2, ¶¶ 55-64; Supplemental

13   Compendium, Omission #2, ¶¶ 5-6. "Lion" was a pilot program that Matterport launched in San

14   Francisco in July 2017, as Matterport was going to get into the scanning business. Dkt. 100-4,

15   Johnson Dep. 78:15-79:10; Dkt. 100-3, Wilson Dep., 24:12-17; Dkt. 100-5, Chen Dep. 32:15-

16   16, 33:16-34:9. "Lion" was the precursor to the Capture Services program that was announced

17   in the Spring 2020. Dkt. 100-4, Johnson Dep. 83:13-17; Dkt. 100-2, Fellars Dep. 20:1-2.

18   Matterport quickly announced it was withdrawing the pilot program due to backlash from MSPs

19   complaining that Matterport would be directly competing with them if the "lion" program

20   continued. Dkt. 100-4, Johnson Dep. 79:11-24, 79:25-80:4; Dkt. 100-3, Wilson Dep., 24:20-23;

21   Dkt. 100-1, Itskovitz Dep. 54:23-55:16.

22   However, Matterport continued to do the "lion" program surreptitiously while

23   Matterport continued to enroll people into the MSP program from July 2017 until Johnson left

24   Matterport on September 15, 2019, but Matterport was not telling the prospective MSPs about it

25   when Matterport was enrolling them into the MSP program. Dkt. 100-4, Johnson Dep. 81:11-

26   24, 84:4-13. Wilson contacted Johnson directly to help the camera operators who were part of

27   the secret "lion" program with their technical scanning questions, but Wilson did not go through

28   the normal support channels so there would be no documentation, and Wilson told Johnson that

- 14 -

1    it was not something that was public and to keep it "hush hush." Dkt. 100-4, Johnson Dep.

2    81:25-83:12.

3        Johnson thought Matterport's surreptitious "lion" program was a conflict of interest with

4    the MSPs because Matterport was competing against its MSPs for 3D scanning business.

5    Johnson told her manager and Wilson about the conflict of interest, and her manager did

6    nothing and Wilson told her not to talk about it. Dkt. 100-4, Johnson Dep. 84:19-85:21. After

7    Capture Services was announced in Spring 2020, numerous MSPs complained that Matterport

8    was competing against them, and they lost customers who hired Matterport Capture Services

9    technicians instead of the MSPs. Dkt. 101-21 (Trial Exhibit 59); Dkt. 101-23 (Trial Exhibit 61).

10

11        For example, Shawn Lynch has been an MSP since April 2018. *See* Dkt. 123-2

12    (Declaration of Shawn Lynch, at ¶ 2). One of his regular clients had been Cushman &

13    Wakefield. *Id.*, ¶ 6. This client provided approximately 26% of his company's revenue for 2021.

14    *Id.*, ¶ 6. Earlier this year, in January 2022, Cushman & Wakefield notified Lynch that they

15    signed up with Matterport Capture Services and would no longer need his services. *Id.*, ¶ 8.

16        Matterport continues to promote its Capture Services program to the detriment of the

17    MSP program. Matterport is not promoting its MSPs and, instead, is promoting its Capture

18    Services program and competing with MSPs for 3D scanning business. Matterport's "Find a

19    Matterport Service Partner" webpage *actually promotes its Capture Services program*.  *See* Dkt.

20    147-3,     support.matterport.com/s/article/Find-a-Matterport-Service-Partner?language=en_US

21    (last visited June 26, 2022) ("Do you want a Matterport Space of your property but you aren't

22    ready to invest in a camera? Try out Matterport's Capture Services. Learn more about how to

23    order Capture Services in the How to Order Capture Services article."). It is only after making

24    representations promoting its Capture Services program that Matterport says you can contact an

25    MSP in your local area to do the scan *if Capture Services is not available*. And Matterport

26    continues to promote Capture Services on its other webpages exclusively with *no mention* of

27    MSPs. *See* Dkt. 147-3, matterport.com/cameras (last visited June 26, 2022) ("And if you'd

28

1   rather have someone else do the scanning, we can take care of it for you with Matterport

2   Capture Services™."). The Court may take judicial notice of Matterport's webpages.[8]

3          As a direct and proximate result of Defendants' continuing conduct, Class members

4   have an adequate risk of future harm from Matterport's competing for 3D scanning business,

5   which compels certification of an injunctive relief class. *See, e.g.,* Dkt. 168, Order Re

6   Defendants' Motion for Summary Judgment, p. 6 ("Matterport does not contest that it continues

7   to operate its capture services, its in-house service that performs ostensibly the same function as

8   MSPs. At this posture, this evidence demonstrated an adequate risk of future harm. Stemmelin

9   has standing to seek this prospective relief.)."

10  **III.   LEGAL STANDARDS**

11         **A.      Requirements for a Rule 23(b)(2) Class**

12         The Court can certify a Rule 23(b)(2) class if Rule 23(a) is satisfied and if: "the party

13  opposing the class has acted or refused to act on grounds that apply generally to the class, so

14  that final injunctive relief or corresponding declaratory relief is appropriate respecting the class

15  as a whole." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 586 (N.D. Cal. 2015) (citing Fed.R.Civ.P.

16  23). Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or

17  superiority of class adjudication to certify a Rule 23(b)(2) class. Rather, only a showing of

18  cohesiveness of class claims is required. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 587 (N.D.

19  Cal. 2015) (citing *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir.1998)).

20         **B.      Plaintiff's UCL and FAL Claims on Behalf of the Injunctive Relief Class**

21         The Califonria Unfair Competition Law ("UCL") prohibits "unfair or fraudulent

22  business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Bus.

23  & Prof. Code § 17200. The California False Advertising Law ("FAL") prohibits untrue or

24

25  [8]  Pursuant to Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of relevant
    facts that are "not subject to reasonable dispute," such as facts that are "generally known within the trial
26  court's territorial jurisdiction," and facts that "can be accurately and readily determined from sources
    whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. Rule 201(b). A court "must take
27  judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Civ.
    P. Rule 201(c); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th
28  Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public
    realm at the time.").

misleading advertising that is known, or which reasonably should be known, to be untrue or misleading. Cal. Bus. & Prof. Code §§ 17500, *et seq*. A violation of the FAL is also a violation of the UCL, which prohibits "any unfair, deceptive, untrue or misleading advertising." *Committee on Children's Television, Inc. v. General Foods Corp*., 35 Cal.3d 197, 210 (Cal. 1983). Under the UCL and FAL, concrete injury occurs with the purchase of a defendant's products containing misrepresentations, irrespective of the subjective state of mind of the purchaser. *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012).

Matterport violated the FAL by making misrepresentations and omissions, FAC ¶ 119, and Matterport violated the UCL by engaging in fraudulent, unfair, and unlawful business practices, FAC ¶¶ 107-110.

The remedies under the UCL and FAL are interpreted in the same fashion and allow for the same type of relief. *Chowning v. Kohl's Dep't Stores, Inc.*, 735 F. App'x 924, 924 (9th Cir. 2018). The UCL is equitable in nature; damages cannot be recovered. Remedies are generally limited to injunctive relief and restitution. *Id*. The injunctive relief sought by Plaintiff is focused on Matterport's competition with MSPs for 3D scanning business through its Capture Services program, which is ongoing and subjects Plaintiff to an imminent and substantial risk of future harm due to Matterport's ongoing misconduct.

In its order denying Defendants' Summary Judgment Motion, the Court noted that "Matterport does not contest that it continues to operate its capture services, its in-house service that performs ostensibly the same function as MSPs." *See* Dkt. No. 168, Order Re Defendants' Motion for Summary Judgment, p. 6. The Court found that "Stemmelin has Article III standing to seek an injunction prohibiting Matterport from competing against MSPs for 3D scanning business." *Id.*

## IV.    LEGAL ARGUMENT

The Rule 23(b)(2) Class which Plaintiff seeks to represent is comprised of and defined as follows (the "Class"):

> All persons in the United States who, within the applicable statute of limitations, applied online through Matterport's website and

- 17 -

became a Matterport Service Partner ("MSP"), and incurred expenses to operate their MSP business.

Excluded from the Class are: (1) Defendants and Defendants' agents; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

With respect to the statute of limitations for the omission about Capture Services, Matterport concealed and did not publicly disclose the Capture Services program until the Spring of 2020, which was only a little over two years ago. Therefore, Plaintiff and other Class members could not have discovered Defendants' omission until that time. Thus, the Class does not have to be limited to a certain time frame because the omissions claims have been timely brought.[9]

### A.    The Requirements of Rule 23(a) Are Met

Plaintiff must satisfy the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. Fed. R. Civ. Proc. 23(a)(1)-(4).

### 1.    Rule 23(a)(1)—Numerosity

Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. Proc. 23(a)(1). "Numerosity is generally satisfied…when the class contains 40 members." *Hernandez v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 15844, at *8 (N.D. Cal. Jan. 29, 2020). Matterport admits that there are 2,377 MSPs nationwide. *See,* Dkt. 100-9, Matterport's Suppl. Resp. to Plaintiff's Interrog., Set One, No. 1.

As a matter of practical application, the ascertainability requirement serves little purpose in Rule 23(b)(2) classes, as there will generally be no need to identify individual class members to enforce the remedy. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015). In any

---

[9]  The statute of limitations is four years for a claim under the Unfair Competition Law (*see* Cal. Bus. & Prof. Code § 17208), and three years for a claim under the False Advertising Law (*see* Cal. Bus. & Prof. Code § 17500; California Code of Civil Procedure Section 338(a)).

1  event, the Class is ascertainable. Matterport has records identifying each MSP (name, address,

2  telephone number, email address). *See* Dkt. 100-11, Matterport's Response to Plaintiff's

3  Interrog., Set One, No. 16. Previously, the Court found that Plaintiff satisfied the numerosity

4  requirement. *See* Dkt. No. 136, Order Re Motion for Class Certification, at p. 5.

5  ### 2.      Rule 23(a)(2)—Commonality

6       Commonality requires "questions of law or fact common to the class." Fed. R. Civ.

7  Proc. 23(a)(2). "A common contention need not be one that will be answered, on the merits, in

8  favor of the class. It only must be of such nature that it is capable of class-wide

9  resolution." *Postpichal v. Cricket Wireless, LLC*, 2021 U.S. Dist. LEXIS 146166, at *18 (N.D.

10  Cal. Aug. 4, 2021) (citing *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir.

11  2015)). "There need only be 'a single significant question of law or fact' [to satisfy

12  commonality]." *Postpichal*, 2021 U.S. Dist. LEXIS 146166, at *18 (citing *Stockwell v. City &*

13  *Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014). The commonality requirement is

14  construed "permissively." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citing

15  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998)). The term "common" as used in

16  Rule 23(a)(1) does not mean "complete congruence." *Id.* (citing *In re First Alliance Mortg. Co.*,

17  471 F.3d 977, 990 (9th Cir.2006)). Commonality does not "require that plaintiffs' have the same

18  exact experience leading up to the harm." *Postpichal*, 2021 U.S. Dist. LEXIS 146166, at *19.

19       The Class includes only individuals who applied online through Matterport's website,

20  became MSPs, and incurred expenses to operate their MSP business. They necessarily would

21  have been exposed to Matterport's uniform misrepresentations on Matterport's MSP program

22  webpages, in Matterport's sales presentations and other Matterport written materials, and when

23  talking about the MSP program to Matterport's sales representatives. There was no other way

24  for them to learn the details about the MSP program, and what was required for them to become

25  an MSP. These misrepresentations were consistent throughout the webpages and written

26  materials, and in the talking points used by the sales representatives. Moreover, nowhere in any

27  of the written marketing and informational materials, or in the sales representatives' talking

28  points, did Matterport inform anyone that it would directly compete against MSPs.

Common questions regarding the claims pursuant to UCL and FAL include, but are not limited to: (a) whether Matterport engaged in false and misleading advertising when advertising and soliciting business for the purchase of its products and services pursuant to the MSP program; (b) whether Matterport made omissions of material facts, including omitting that Matterport would be competing with MSPs for 3D scanning business through the Capture Services program; (c) whether Matterport intended that people rely on its misrepresentations and omissions; (d) whether a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could have been misled; and (e) whether Class members are entitled to injunctive relief..

The Court previously analyzed commonality *and* predominance with respect to the UCL and FAL claims when Plaintiff sought to certify a class pursuant to Rule 23(b)(3). Here, Plaintiff is seeking to certify a Rule 23(b)(2) class, which *does not* require predominance.

The Court previsouly found that the putative class included members who purchased cameras—which the Court deemed the foundation for their economic injury—without being aware of the MSP program. *See* Dkt. No. 136, Order re Motion for Class Certification, pp. 8-12. Because the Court found that some putative class members were not necessarily exposed to the alleged misrepresentations and omissions on the MSP webpages *prior* to their camera purchases, the Court found that common issues do not predominate. In other words, the Court found that the purchase of the camera was the precise harm, but the relationship between the purchase of the camera and the MSP program is "attenuated." *Id.*, at p. 4.

For the Rule 23(b)(2) Class sought here, however, the injury complained of is not the purchase of the cameras but, instead, it is Matterport competing with Class members for 3D scanning business. By definition, members of the injunctive relief class—who were promised a lucrative business opportunity—incurred expenses to operate their MSP business, including monthly subscription fees for Matterport's Cloud services, only to face competition from Matterport for 3D scanning business. Plaintiff has satisfied the commonality requirement.

### 3. Rule 23(a)(3)—Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). To assess this, courts examine "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). While a plaintiff's claims should be "reasonably co-extensive with those of absent class members, they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Generally, a plaintiff's claims are typical if they relate to a common scheme. *Pecover v. Elec. Arts Inc.*, 2010 U.S. Dist. LEXIS 140632, at *34 (N.D. Cal. Dec. 21, 2010).

Plaintiff and all other Class members were exposed to the same misrepresentations and omissions, and were injured in the same manner when they became MSPs and invested in their MSP business only to face competition from Matterport for 3D scanning business.

Previously, the Court rejected Matterport's arguments against typicality, finding that Plaintiff's continued use of Matterport products and services did not make him atypical of other class members. Dkt. No. 136, Order re Motion for Class Certification, pp. 6-7.

Plaintiff's claims are typical of the Class members' claims.

### 4. Rule 23(a)(4)—Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Practically, this requires that the plaintiff's interests do not conflict with the proposed class and that the plaintiff is represented by qualified class counsel. *Hanlon*, 150 F.3d at 1020.

Plaintiff has no interests antagonistic to those of other Class members, and there is no evidence of any conflict. Plaintiff's counsel are experienced in consumer class action litigation, have no conflicts, and have prosecuted and will continue prosecuting the action vigorously on behalf of Class members. Dkt. 99-3, Declaration of Thomas A. Zimmerman, Jr., ¶¶ 4-11, 13. Plaintiff and Plaintiff's counsel are adequate to represent the Rule 23(b)(2) Class.

1    Previously, the Court rejected Matterport's arguments against adequacy finding that it

2    cannot be said that there are conflicts with Class members or that Plaintiff or his counsel would

3    not vigorously advocate for the Class. Dkt. No. 136, Order re Motion for Class Certification, pp.

4    6-7.

5         **B.      The Requirements of Rule 23(b)(2) Are Met**

6         Plaintiff must also satisfy the requirements of Rule 23(b)(2). Fed.R.Civ.P. 23(b)(2).

7    Certification under Rule 23(b)(2) is appropriate where a defendant has acted on "grounds that

8    apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

9    appropriate respecting the class as a whole."  Fed.R.Civ.P. 23(b)(2). The Ninth Circuit has held

10   "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy

11   warranted." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (citation

12   omitted). Moreover, "the primary form of relief available under the UCL to protect consumers

13   from unfair business practices is an injunction." *McGill v. Citibank*, N.A., 2 Cal. 5th 945, 954,

14   393 P.3d 85, 89 (2017) (quoting *In re Tobacco II Cases* 46 Cal.4th 298, 319, 93 Cal.Rptr.3d 559,

15   207 P.3d 20 (2009)).

16        In determining whether certification is appropriate under Rule 23(b)(2), a court must

17   "look at whether class members seek uniform relief from a practice applicable to all of them."

18   *Shields v. Walt Disney Parks & Resorts US, Inc.*, 279 F.R.D. 529, 557 (C.D. Cal. 2011) (citing

19   *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)). "The fact that some class members

20   may have suffered no injury or different injuries from the challenged practice does not prevent

21   the class from meeting the requirements of Rule 23(b)(2)." *Id.* (citing *Walters v. Reno*, 145 F.3d

22   1032, 1047 (9th Cir. 1998)). This subsection "applies only when a single injunction or

23   declaratory judgment would provide relief to each member of the class." *Id.* To the extent any

24   opposition to the requested relief might exist, it would not preclude certification under Rule

25   23(b)(2). *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 601 (N.D. Cal. 2015) (citing *Walters v. Reno*,

26   145 F.3d 1032, 1047) (9th Cir. 1998) (citing 7A Wright, Miller & Kane, Federal Practice &

27   Procedure § 1775 (2d ed.) ("All the class members need not be aggrieved by or desire to

28   challenge the defendant's conduct in order for some of them to seek relief under Rule

23(b)(2).")).

For the first element, Matterport's conduct applies generally to the Class because Matterport has virtually abandoned the MSP program in favor of its Capture Services program and is actively competing with MSPs for 3D scanning business to the deteriment of Class members. *See* Section II.B.6, *supra*, Omission #2.

For the second element, injunctive relief is appropriate respecting the Class as a whole. Matterport is competing nationwide with all MSPs for 3D scanning business. *See*, Dkt. 168, Order Re Defendants' Motion for Summary Judgment, p. 6 ("Matterport does not contest that it continues to operate its capture services, its in-house service that performs ostensibly the same function as MSPs."). Plaintiff seeks injunctive relief prohibiting Matterport from competing against MSPs for 3D scanning business. *See* FAC, Prayer for Relief, ¶ d.

Thus, uniform relief is sought for Plaintiff and Class members, and the relief sought would remedy a practice applicable to all Class members. *Shields v. Walt Disney Parks & Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) ("For Rule 23(b)(2) purposes, the relevant questions are whether class members seek uniform relief and whether the relief remedies a practice applicable to all class members.") (citing *Rodriguez*, 591 F.3d at 1125).

Even in cities where Capture Services may not yet be available, there is evidence that demonstrates an adequate risk of future harm because Matterport is rolling out Capture Services city by city. *See* Dkt. 147-3, Matterport's "Find a Matterport Service Partner" webpage states "Capture Services is being rolled out city by city. If your city is not yet in network you can sign up for notifications of when we will be in your area." This creates an adequate risk of future harm. The sought-after injunctive relief would prevent this future harm.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff requests the Court grant his motion to certify the proposed Rule 23(b)(2) Class identified in the Notice of Motion, Motion, and herein, and for any other relief the Court deems just under the circumstances.

ZIMMERMAN LAW OFFICES, P.C.

Dated: August 26, 2022          By:  /s/ Thomas A. Zimmerman, Jr.
                                     Thomas A. Zimmerman, Jr.
                                     Sharon A. Harris

                                     Attorneys for Plaintiff JOHN STEMMELIN and the putative Class

- 23 -